172 Ill. App.3d 790 (1988)
527 N.E.2d 146
THE PEOPLE OF THE STATE OF ILLINOIS ex rel. SAMUEL K. SKINNER, Chairman, Capital Development Board, Plaintiff-Appellant,
v.
CAUDILL ROWLETT SCOTT, Defendant-Appellee (Fidelity and Deposit Company of Maryland, Defendant; Sjostrom & Sons, Inc., Defendant and Third-Party Plaintiff; J.W. Peters & Sons, Inc., et al., Third-Party Defendants-Appellees).
No. 2-87-1058.
Illinois Appellate Court  Second District.
Opinion filed August 1, 1988.
*791 *792 Neil F. Hartigan, Attorney General, and Howard W. Feldman and Carl R. Draper, both of Feldman & Wasser, both of Springfield (Shawn W. Denney and Robert J. Ruiz, Solicitors General, of Chicago, of counsel), for appellant.
Charles G. Brown, of Boyle, Cordes & Brown, of De Kalb, and Greensfelder, Hamker, Wiese, Gale & Cahppelow, of St. Louis, Missouri (Jeffrey T. Demerath, of counsel), for appellees.
Judgment affirmed.
JUSTICE UNVERZAGT delivered the opinion of the court:
Plaintiff, the People of the State of Illinois on the relation of Samuel K. Skinner, Chairman of the Capital Development Board, brought an action in the circuit court of De Kalb County against defendants, Caudill Rowlett Scott (Caudill), Fidelity Deposit Company of Maryland (Fidelity) and Sjostrom & Sons, Inc. (Sjostrom), seeking money damages for defects in the design and construction of Kishwaukee College in Malta. Defendants moved for summary judgment claiming that plaintiff's cause of action had not been brought within the time required by the applicable statute of limitations. The trial court granted the motions for summary judgment and dismissed the case.
Subsequent to the hearing on the motions for summary judgment, but prior to the court's ruling on the motions, the parties engaged in settlement negotiations. Plaintiff, believing that a settlement agreement had been entered into, filed a motion to enforce that agreement. A hearing was held on the motion, during which defendants Sjostrom and Fidelity settled with plaintiff and were dismissed as parties. Following the hearing, the trial court denied plaintiff's motion to enforce.
Plaintiff appeals from the trial court's rulings granting defendants' motions for summary judgment and denying plaintiff's motion to enforce the settlement agreement. Having settled with the plaintiff, defendants Sjostrom and Fidelity are not parties to this appeal.
On appeal, plaintiff contends: (1) that the trial court erred in finding that plaintiff's complaint was not filed within a reasonable time after amendment to section 13-214 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 13-214), the applicable statute of limitations, and (2) that the trial court erred in ruling that the parties had not entered into an enforceable settlement agreement.
The Illinois Building Authority (IBA), the predecessor of plaintiff *793 Capital Development Board (CDB), retained defendant Caudill, as architect, to provide the design and construction of Kishwaukee College. IBA also retained defendant Sjostrom as general contractor for the actual construction of the college. Defendant Fidelity issued a performance and payment bond on behalf of its principal, Sjostrom, made payable to the IBA. During June 1970, Sjostrom commenced construction of phase I of the college building, and on November 13, 1972, the president of the college signed a certificate of substantial completion. Uncompleted items on a "punch list," which included correction of leaks in the building, were to be resolved by the contractor.
Following construction of the building, water leakage through the roof continuously occurred, necessitating numerous repairs to the roof between 1972 and 1976. Throughout 1976 to 1978, the leaks increased substantially. In 1978 the CDB contacted several professional engineering firms for the purpose of obtaining an analysis of the problem. One firm, Wight & Company, was retained to inspect the structure, and in April 1979, it issued a report setting forth several design and construction errors in the roof, including the use of blast furnace slag as an aggregate, the failure to use coal-tar pitch, and deflection in the concrete roof beams. The college administration forwarded that report on May 4, 1979, to the CDB since the CDB had to approve structural repairs.
On May 21, 1981, staff of the CDB conducted a survey of the building constructed during phase I to determine the structural capacity of the roof and the means and methods of repair or replacement. As a result of that survey, the staff determined that errors in design and construction existed. In May 1982, the CDB certified the Kishwaukee College phase I structure as a design and construction error. On October 6, 1982, plaintiff filed its original complaint against defendants Caudill and Fidelity. Plaintiff added count IV to its complaint on November 29, 1982, naming Sjostrom as an additional defendant.
The original complaint was dismissed pursuant to various motions filed by defendants. On May 12, 1983, plaintiff filed a first amended complaint. On April 2, 1984, defendant Sjostrom filed a third-party complaint against third-party defendants J.W. Peters & Sons, Inc., and Carlson Roofing Company, subcontractors responsible for installation of the roof on the phase I structure.
The defendants filed motions for summary judgment and supporting memoranda of law, alleging that plaintiff's cause of action was not brought within the time required by the pertinent statute of limitations, section 13-214 of the Code of Civil Procedure (Ill. Rev. Stat. *794 1981, ch. 110, par. 13-214), as that statute existed at the time the action was filed. The statute provided that an action for design and construction errors must be brought within two years from the time the person bringing the action knew or should reasonably have known of the act or omission complained of.
A hearing was held on the motions for summary judgment on February 2, 1987. On September 18, 1987, the court mailed its opinion letter to the parties informing the parties of its decision to grant defendants' motions for summary judgment. The court directed counsel to prepare an appropriate order and to submit it to the court for signature. On October 14, 1987, the court entered the order.
In the time span between the hearing on defendants' motion for summary judgment on February 2, 1987, and the court's opinion letter on September 18, 1987, the parties undertook settlement negotiations by letter and by telephone conversation. On February 20, 1987, defendants offered to settle for the sum of $48,333.33. In a letter dated July 1, 1987, plaintiff acknowledged receipt of the $48,333.33 offer by defendants but indicated that the CDB wanted to settle for $75,000. On July 15, 1987, defendants sent a letter to plaintiff in which defendants referred to a prior offer of $58,333.33 and presented three alternatives for settlement.
On September 21, 1987, the parties received the trial court's September 18 opinion letter. On September 21, plaintiff's counsel, Howard Feldman, telephoned counsel representing the defendants, Thomas Greenwald, to accept defendants' offer of settlement as set forth in defendants' July 15 letter. When defendants failed to comply with the alleged settlement agreement, plaintiff filed a motion to enforce the settlement agreement. A hearing was conducted on plaintiff's motion on November 6, 1987. At the conclusion of that hearing the trial court denied plaintiff's motion, finding that defendants' letter of July 15, 1987, did not constitute an offer.
Plaintiff appeals the trial court's order of October 14, 1987, granting defendants' motions for summary judgment and its order of November 6, 1987, denying plaintiff's motion to enforce the settlement agreement.
In its first contention plaintiff argues that the trial court erred in finding that plaintiff failed to file its complaint within a reasonable time after the 1981 amendment to the statute of limitations specifically applicable to the construction industry and to this cause. That amendment to section 13-214 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 13-214), effective September 16, 1981, had the effect of deleting subparagraph (e) of section 13-214, a savings *795 clause, which provided:
"The limitations of this Section shall apply to all acts or omissions which occur on or after November 29, 1979."
The repeal of this subparagraph resulted in making the limitations of section 13-214 immediately applicable to this cause, which involves defects in the 1972 design and construction of the structure constituting phase I of Kishwaukee College. Under the limitations set forth in section 13-214, an action based upon defects in the design or construction of a building must be commenced "within 2 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." (Ill. Rev. Stat. 1981, ch. 110, par. 13-214(a).) In the instant case, the trial court found that the plaintiff knew or should have known of the defects involved in the structure in question on or before September 7, 1979, and, therefore, the amendment deleting the savings clause of section 13-214 cut off plaintiff's right to file its complaint, which was not brought until October 6, 1982, 13 months after the date of the enactment of the amendment.
Plaintiff maintains, however, that those affected by a retroactive application of a reduction in a limitation law must be given a reasonable time in which to commence their case and that, in light of this court's holding in DeSeve v. Ladd Enterprises, Inc. (1985), 137 Ill. App.3d 796, this court should find that an action brought within 13 months of the enactment of the amendment deleting the savings clause of section 13-214 was filed within a reasonable time.
In DeSeve, we determined that had the plaintiff there filed his cause of action within one year of the effective date of the repeal of the savings clause of section 13-214, rather than delaying 17 months in bringing his action, the one-year period of time could have been deemed reasonable. (137 Ill. App.3d at 801.) Based on this determination, plaintiff concludes that a 13-month delay should also be considered reasonable. Plaintiff ignores, however, that unlike the instant case, the time period at issue in DeSeve was not the two-year period subsequent to discovery of a defect, as set forth in subparagraph (a) of section 13-214, but rather the 12-year period of repose, set forth in subparagraph (b).
The plaintiff in DeSeve brought an action in February 1983 for injuries he incurred on August 9, 1981, when the floor of a house he was visiting collapsed. Because that home had been constructed in 1968, more than 12 years had elapsed since its construction, and, thus, the repeal of the savings clause set forth in section 13-214 immediately barred his claim. Nevertheless, this court found that to apply *796 retroactively the repeal of the savings clause to plaintiff's claim, which occurred only 38 days prior to the effective date of that repeal, would be unreasonable and unjust. We concluded, therefore, that plaintiff must be given a reasonable time after the amendment's effective date in which to file his action, but that a 17-month delay was unreasonable. 137 Ill. App.3d at 800-01.
 1, 2 It has been held, as defendants point out, that the repeal of the savings clause of section 13-214 acts as an immediate bar to actions premised on defects in buildings constructed before 1979 which at the time of the repeal would have been barred but for the savings clause. (See Champaign County Nursing Home v. Petry Roofing, Inc. (1983), 117 Ill. App.3d 76, 79.) However, the general rule in Illinois is that an amendment shortening a statute of limitations will not be retroactively applied so as to terminate a cause of action unless the plaintiff has had a reasonable period of time after the amendment's effective date in which to commence his action. (Mega v. Holy Cross Hospital (1986), 111 Ill.2d 416, 420; Matayka v. Melia (1983), 119 Ill. App.3d 221, 223-24.) What constitutes a reasonable time depends upon the particular facts and circumstances presented to the court. See Matayka, 119 Ill. App.3d 221.
In Matayka, plaintiff purchased a home built by defendant's construction company in December 1978. Pursuant to the real estate contract, defendant was to make certain repairs and correct certain defects in the house. After several unsuccessful demands by the plaintiff, defendant was advised by plaintiff's attorney in November 1980, that unless defendant began performance of his obligation within seven days, plaintiff would pursue her rights in "another manner." Defendant did not perform, but plaintiff took no action until she filed a complaint in June 1982, nine months after the September 1981 repeal of the savings clause of section 13-214. Under the facts of Matayka, specifically the "plaintiff's long standing knowledge of the defects and the defendant's obvious unwillingness to perform," the court found plaintiff's claim barred due to her unreasonable delay in filing suit. 119 Ill. App.3d at 224-25.
 3 Likewise, under the facts and circumstances of the instant case, plaintiff's delay in filing its action until 13 months after the enactment of the amendment to section 13-214, deleting the savings clause, was also unreasonable. The evidence showed that, as early as 1972, plaintiff had knowledge of the leaks in the building in question. This water leakage continued to occur between 1972 and 1976, necessitating repairs to the roof of that structure. Throughout 1976 to 1978 the leaks increased substantially. In 1979, Wight and Company, an architectural *797 and engineering firm, was retained to inspect the building, and in April 1979, it issued a formal report detailing several design and construction errors in the roof. That report was forwarded by the college administration to the CDB on May 4, 1979. On May 21, 1981, staff of the CDB conducted a survey of the structure in question to determine the means and methods of repair or replacement of the roof. In May 1982, the CDB certified the structure as a design and construction error. Even then, however, plaintiff did not file the complaint against defendants until October 6, 1982. From these facts, it appears evident to us that prior to filing its complaint, plaintiff had knowledge of a defective condition in the building's roof for at least 10 years and knowledge of the specific defects for more than three years. We find that plaintiff did not timely file suit after the amendment of section 13-214.
 4 Moreover, we are in agreement with defendants that plaintiff's attempts to argue that its action against defendants was brought within three months after the amendment to the statute, due to the reappearance of the savings clause in the July 1, 1982, recodification of the statutes contained in the Code of Civil Procedure, are meritless. The subsequent deletion of the clause on July 13, 1982, after its erroneous inclusion in the Code of Civil Procedure, evidences the legislature's intent that the repeal of the savings clause in September 1981 was to have immediate effect. See Champaign County Nursing Home, 117 Ill. App.3d at 79.
 5 Further, we find misplaced plaintiff's assertion that in determining whether plaintiff's 1982 action was timely filed this court should consider that the legislature amended section 13-214 in 1985 to increase the period of limitations from two years to four years after discovery of defects in design and construction. A subsequent statutory amendment extending the time for filing a cause of action or claim will not be applied retroactively to revive a cause of action or claim which had been previously barred. Hupp v. Gray (1978), 73 Ill.2d 78, 83-84; Arnold Engineering, Inc. v. Industrial Comm'n (1978), 72 Ill.2d 161, 165-66.
Plaintiff's second contention is that the trial court erred in ruling that the parties had not entered into an enforceable settlement agreement. Plaintiff maintains here, as it did in its motion to enforce settlement agreement, that defendants' letter of July 15, 1987, contained an offer of settlement which defendants never revoked and which plaintiff properly accepted on September 21, 1987.
 6, 7 Settlement agreements are to be encouraged and given full force and effect. (McAllister v. Hayes (1988), 165 Ill. App.3d 426, *798 427.) A settlement agreement is binding so long as there is clearly an offer to compromise and an acceptance, and there is a meeting of the minds as to the terms of the agreement. (165 Ill. App.3d at 427; Knisley v. City of Jacksonville (1986), 147 Ill. App.3d 116, 119.) Although counsel for a party may bind his client to a settlement agreement (147 Ill. App.3d at 120; Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co. (1976), 42 Ill. App.3d 865, 869), the evidence presented at the hearing indicated that the July 15 letter from attorney Thomas Greenwald to attorney Howard Feldman did not reflect a "meeting of the minds."
The opening sentence of the July 15 letter from Greenwald, counsel representing all the defendants in settlement negotiations, to Feldman, counsel for plaintiff, stated: "Pursuant to our discussion, I would like to set forth below the amounts to be contributed with respect to the settlement I already offered to the Capital Development Board in the sum of $58,333.33." The court determined that this sentence and testimony at the hearing on plaintiff's motion to enforce settlement indicated that a settlement had been offered on July 6 during a telephone conversation between counsel for the parties but that the offer had not been reduced to writing or memorialized in any manner so that its terms were made exact, precise, and susceptible of enforcement. Indeed, the July 15 letter appears to support the court's determination that some sort of offer occurred on July 6 as far as an amount was concerned but that no terms or conditions had been agreed upon. When questioned by the court as to what terms or conditions attorney Greenwald discussed with attorney Feldman on July 6 regarding the manner in which the offer could be accepted, Greenwald replied, "We didn't discuss that. All we discussed was the amount."
In the July 15 letter Greenwald suggested three options plaintiff could choose from in settling with defendants. One option was to accept the $58,333.33 made up of contributions from defendants Caudill and Sjostrom and from third-party defendants Carlson Roofing Co. (Carlson) and J.W. Peters (Peters). A second choice involved accepting contributions from Caudill, Sjostrom, and Carlson, who would then execute an assignment to the Capital Development Board assigning any and all claims these parties may have or could have against Peters. If plaintiff accepted this option, the sum of the contributions from these three parties would equal $55,833.33. The third option involved convincing counsel for Peters to agree to increase its contribution to $4,166.66 which would, according to Greenwald's letter, in turn, raise the resulting offer to the "$60,000 figure that you [Feldman] *799 said the Capital Development Board would accept."
The presentation of these various options leads us to conclude that the terms of the proposed settlement agreement had not been finalized at the time that plaintiff's counsel, Feldman, called defendants' counsel, Greenwald, on September 21 to simply state, as Feldman testified at the hearing, "I accept." At any rate, it is unclear from this simple statement whether plaintiff was accepting the $58,333.33 settlement, the $55,833.33 settlement, or the $60,000 settlement. In our view, there had been no meeting of the minds at the time Feldman called Greenwald to state, "I accept," since it is unclear which payment option Feldman was accepting. Thus, at the time Feldman called Greenwald on September 21 to state plaintiff's acceptance, no enforceable settlement agreement existed.
Although plaintiff rejected defendants' offer of $48,333.33 in defendants' letter of February 20, 1987, by counteroffering in the amount of $75,000 in plaintiff's July 1, 1987, letter, defendants maintain that limitations in the terms of the February 20 letter stating that defendants will keep the offer "open for 30 days or until resolution by the Circuit Court of the pending motions" were not rejected. Therefore, defendants assert, if, in fact, an offer existed at the time the court sent its opinion letter of September 18, 1987, to the parties indicating its intention to grant defendants' motion for summary judgment, that offer was automatically revoked by the court's resolution, and plaintiff could not subsequently accept. We do not agree with defendants' position but find it unnecessary to address it since we have determined that no agreement between the parties had been reached at the time of plaintiff's acceptance on September 21, 1987.
Accordingly, the judgment of the circuit court of De Kalb County is affirmed.
Affirmed.
LINDBERG, P.J., and WOODWARD, J., concur.