BALL CORPORATION, Plaintiff-Appellee, v. BOHLIN BUILDING COR-
PORATION *et al.*, Defendants (Boice Roofing Company, Defendant-Appel-
lant).

First District (1st Division)   No. 1—88—0387

Opinion filed June 5, 1989.—Rehearing denied September 11, 1989.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Charles B. Lewis, and Lisa Sopata, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Jeffrey J. Asperger, James R. Swinehart, and Jeanette M. Bourey, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

This appeal and cross-appeal arise from damages incurred by plaintiff, Ball Corporation, to portions of its warehouse roof as the result of a windstorm on April 5, 1979. On March 18, 1982, Ball filed a complaint against defendants, Bohlin Building Corporation, general contractor for the 1973 and 1977 roof additions to Ball's warehouse; Dexter-Mook Roofing Sheet Metal Works, Inc., the roofing subcontractor for the 1977 addition; and Boice Roofing Company, the roofing subcontractor for the 1974 addition, alleging that each defendant had been careless and negligent. Subsequently, on March 12, 1986, Ball filed an amended complaint, adding breach of contract counts predicated on a third-party beneficiary theory against Boice and Dexter-Mook and breach of contract and breach of implied warranty counts against Bohlin. The trial court denied motions for summary judgment filed by Bohlin, Boice and Dexter-Mook. Following a jury trial, the trial court directed a verdict in favor of defendants on the negligence counts and the jury found for Ball and against all defendants on the contract counts, assessing damages in the amount of $104,913.65. Bohlin was found liable for 20% of the damages, Boice for 50% and Dexter-Mook for 30%. Boice's post-trial motions were denied.

On appeal, Boice, sole appellant, contends that the trial court erred in finding that Ball was a third-party beneficiary to the contract between Bohlin, general contractor, and Boice, subcontractor. On cross-appeal, Ball contends that the trial court erred in directing a verdict in favor of Boice on the negligence count. For the following reasons, we reverse the trial court's judgment as to the contract count and affirm the trial court's judgment entering a directed verdict in Boice's favor as to the negligence count.

With respect to the contract count, Ball contends that it is entitled to damages as a third-party beneficiary to the contract between Bohlin and Boice. In response, Boice argues that the clear and unambiguous terms of the Ball-Bohlin contract, expressly incorporated into

the Bohlin-Boice contract, state that Ball has no contractual relationship with any subcontractor, including Boice.

■■ Pursuant to Illinois law, there is a strong presumption that parties to a contract intend that the contract's provisions apply to only them and not to third parties. In order to overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration. (*Alaniz v. Schal Associates* (1988), 175 Ill. App. 3d 310, 529 N.E.2d 832.) It is the intention of the parties as evidenced by the contract that determines whether another is a third-party beneficiary. It is not enough that the beneficiary is an incidental beneficiary, *i.e.*, that the third party will reap incidental benefits from the contract. Only a direct beneficiary has a right against the promisor or promisee. (*People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918.) A third party is a direct rather than an incidental beneficiary when the contracting parties have manifested in their contract an intention to confer a benefit upon the third party. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 421 N.E.2d 182; *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547, 502 N.E.2d 1134.) Liability to a third-party must affirmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution, and cannot be expanded or enlarged simply because the situation and circumstances justify or demand further or other liability. *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E.2d 498; *Midwest Concrete Products Co. v. La Salle National Bank* (1981), 94 Ill. App. 3d 394, 418 N.E.2d 988.

In the present case, the contract between Ball, the owner, and Bohlin, the general contractor, included the following specifications drafted by Ball:

"I—5 *CONTRACTOR*

Only one Contractor will be recognized as the other party in any specific contract, and this Contractor shall be held responsible as prime Contractor for the proper fittings of all work and for the coordination of all his tradesmen, subcontractors, materialmen, or suppliers engaged upon his part of the work. He shall also be fully and solely responsible to the Engineer for the acts or omissions of his men, his subcontractors, and of persons either directly or indirectly employed by his subcontractors or supplying materials or supplies to him or his subcontractors.

I—6 *SUBCONTRACTORS*

All portions of the work that the Contractor's organization

has not been accustomed to perform or that the Owner may approve shall be executed under separate subcontracts let by the Contractor.

The Contractor, being fully responsible for the work shall have full directing authority over the execution of the subcontracts under his general contract.

The Contractor shall notify the Owner in writing, the name of subcontractors and suppliers proposed for parts of his work not performed by himself, and for such other parts as the Owner may request. The Owner reserves the right of approval of all subcontractors.

Nothing contained in the contract documents shall create any contractual relation between any subcontractor and the Owner.

The subcontractor, however, under specific requirements of his contract with a prime contractor, shall be responsible through the contractor with whom he has a contract for his work, and wherever required by the specifications shall guarantee his work for a specified period of time.''

The above-stated specifications were, *inter alia*, expressly incorporated into the contract between Bohlin and Boice, the subcontractor. Accordingly, the Bohlin-Boice contract specifically provided that there was to be no contractual relationship between Ball, the owner, and Boice, the subcontractor. Rather, Boice's sole contractual relationship was to be with Bohlin.

As previously stated, it is well established that in determining third-party beneficiary status, the contract is controlling. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E.2d 498; *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918; *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 421 N.E.2d 182.) In our view, the intent in specification I—6 is unequivocal that Ball intended that all contracts between Bohlin and its subcontractors impose obligations and benefits solely between those parties. Further, other paragraphs of specification I—6 also support that conclusion, *i.e.*, all of the contractor's work not performed by its organization shall be executed under separate subcontracts let by the contractor; the contractor is fully responsible for the subcontractor's work and has "full, directing" authority over the execution of the subcontracts; and the subcontractor is responsible through the contractor for his work. Moreover, all of these provisions were drafted by Ball and any ambiguities should be construed against Ball. *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314.

Furthermore, contrary to Ball's position that Bohlin and Boice acted for its direct benefit, thereby making Ball a direct beneficiary of the Bohlin-Boice contract, we find that Bohlin and Boice acted entirely in their own self-interest and Ball was merely an incidental beneficiary. Bohlin contracted with Boice for materials and labor that it needed to fulfill its obligations under the general contract. Boice agreed to supply the material and the labor with the expectations of making a profit. Any benefit to Ball was incidental and, as such, does not confer third-party beneficiary status. To hold otherwise under these facts would allow Ball to have a contractual relationship with Boice when it would be economically beneficial to Ball and to disavow a contractual relationship in the event Boice, as subcontractor, is not paid by Bohlin. In addition, if Ball were granted third-party beneficiary status in a situation where an express contract provision indicates a contrary intent of the parties, it is difficult to imagine a situation where the owner of property would not be the third-party beneficiary of a contract between the general contractor and the subcontractor. Logically, an owner will always benefit from any work done on his property. However, in circumstances such as those at bar, that benefit is merely incidental to the contract between the general contractor and the subcontractor.

Both Ball and Boice cite to extensive authority in support of their positions. However, none of the cases cited contains the fact situation at bar, where the specifications in the contract between Ball and Bohlin, incorporated by reference into the contract between Bohlin and Boice, clearly state that the parties intend that no contractual relationship shall exist between Ball and Boice, as subcontractor. Accordingly, in light of the clear and unambiguous contractual agreements between the parties to prevent the creation of contractual rights between Ball and Boice, we conclude that the trial court erred in denying Boice's motion for a directed verdict in its favor as to count VI, the breach of contract count.

■ On cross-appeal, Ball contends that the trial court erred in directing a verdict in favor of Boice on the negligence count. The established standard for granting a motion for a directed verdict is whether, considering the evidence most strongly against the movant, no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Ball contends that it presented ample evidence to support its theory that Boice had acted negligently by improperly and inadequately fastening the roofing materials to the deck and the trial court should have denied Boice's motion for a directed verdict. In reliance on

*Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 475 N.E.2d 822, Boice counters that, as a subcontractor, its scope of duty was limited and defined by the terms of its contract with Bohlin, which it had fully performed.

In *Ferentchak*, plaintiff homeowners sought recovery from the civil engineer, land developers and the village for damage to their homes from flooding due to low foundation grade levels. It was undisputed that the foundation grade levels were not in violation of the village's minimum height regulation. The engineer was hired by the land developer to design and to observe the construction of the subdivision's surface water drainage system. The contract did not require the engineer to set the foundation grade levels for each lot. When the engineer completed the design, he submitted the plans to the developer who, in turn, submitted them to the village for approval, which was given.

When the flooding occurred, plaintiffs filed a negligence action against the village, the engineer and the initial and subsequent land developers. At trial, plaintiffs' expert testified that it was the engineer's professional obligation to incorporate foundation grade levels on the plat. In response, the engineer stated that he purposefully had omitted that information because, *inter alia,* his contract did not require him to include it, and his responsibility to the plaintiffs was limited to his contractual obligations. The jury found the engineer liable and the appellate court affirmed.

On appeal to the Illinois Supreme Court, that court found that the engineer's reliance on his contract, which did not require that he set foundation grade levels, was not misplaced because the contract defined the limitations of his duty. Moreover, even though there were no specified foundation grade levels, the land developer had accepted the engineer's work and had filed it with the village, which also gave its approval. With respect to the argument raised at trial that, regardless of what the contract stated, the engineer had not exercised the degree of care and skill ordinarily required of other civil engineers in the community, the supreme court held that the degree of skill and care required of the engineer in this case was defined by the contract and the community standard was irrelevant. The supreme court concluded that, absent an obligation in the contract to specify foundation grade levels, the engineer could not be found liable in negligence for his failure to do so and his motion for a directed verdict should have been granted.

■ In our view, the present case is factually similar to *Ferentchak*. Both Ball's engineer and its expert witness testified that the

roofing materials put down by Boice tore away from the deck during the windstorm as the result of Boice's improper application of adhesive. However, it is undisputed that the contract entered into between Bohlin and Boice did not specify what type of adhesive was to be used or how the adhesive was to be applied. Further, Ball's engineer testified that the work done by Boice had complied with the plans and specifications which had been incorporated into its contract. Similarly, Ball's roofing expert testified that the plans and specifications had nothing to do with the failure of the roof. In addition, not only did Ball approve Boice's work; Johns-Mansville, manufacturer of the roofing materials, issued a bond to Ball, guaranteeing that the work had been done in accordance with its specifications, and the City had approved the plans and specifications prepared by Ball and followed by Boice.

Pursuant to *Ferentchak,* Boice's contractual duties were defined by and limited to the terms of the contract, regardless of whether the degree and skill exercised by Boice was the same as that ordinarily exercised by roofing subcontractors in the community. Because the evidence indicates that Boice had complied with the terms of the contract, the manufacturer of the roofing materials had issued a bond indicating compliance with its specifications, and there was no evidence presented to the contrary, we find that Boice did not breach its duty as defined by the contract. Accordingly, in the absence of sufficient evidence to establish negligence, we conclude that the trial court properly granted Boice's motion for a directed verdict on the negligence count.

As a further note, the testimony of Ball's expert that the manufacturer's specifications for application of its product and the City building code requirements are impliedly made a part of the original contract between Bohlin and Boice also does not establish a duty that Boice use a particular type of adhesive process. As stated, both the manufacturer and the City approved the plans and the work. Once the plans were approved by the City, it would not be incumbent upon Boice to assume there were additional requirements, not stated therein, that had to be met. (See *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 475 N.E.2d 822.) Our conclusion that there was insufficient evidence to establish Boice's negligence obviates the need to address the issue concerning the economic loss doctrine.

■ As a final point, Ball further claims that the trial court erred in stating that part of its reason for directing a verdict on the negligence count was that the contract and tort counts were inconsistent. Boice does not respond to this argument. In light of the fact that the

directed verdict on the negligence count in favor of Boice was properly entered on the ground that no breach of duty had been established, this issue is moot.

For the aforementioned reasons, we reverse the trial court's judgment as to the contract count; affirm the trial court's judgment entering a directed verdict in favor of Boice as to the negligence count; and remand the cause for further proceedings as may be necessary.

Reversed in part; affirmed in part; and remanded.

MANNING, P.J., and BUCKLEY, J., concur.