155 HARBOR DRIVE CONDOMINIUM ASSOCIATION, Plaintiff-Appellant, v. HARBOR POINT INCORPORATED *et al.*, Defendants-Appellees.

First District (4th Division)   Nos. 1—88—3158, 1—88—3492 cons.

Opinion filed February 7, 1991.

Ira Gould and Aaron C. Horowitz, both of Holleb & Coff, of Chicago, for appellant.

Edna Selan Epstein, of Chicago, for appellees T.I.C. Venture, Harbor Point Venture, Illinois Center Corporation, and Talman/Home Investments, Inc.

Pedersen & Houpt, of Chicago (Donald J. Moran and Marilee Roberg, of counsel), for appellee Elsa Benson, Inc.

Larry Selander, David E. Schaper, and Sonia U. Chae, all of Keck, Mahin & Cate, of Chicago, for appellee Crescent Erection Company.

Robert E. Shapiro, of Barack, Ferrazzano, Kirschbaum & Perlman, of Chicago, for appellee Consolidated Aluminum Corporation.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, 155 Harbor Drive Condominium Association, is appealing the dismissal of its action in the circuit court of Cook County. Plaintiff seeks to set aside the decision of the trial court that found its complaint against defendants did not state a valid cause of action.

The following issues are before this court for review: (1) whether the trial court erred when it ruled that the breach of warranty claims were acts arising out of the construction of a building, and that the construction statute of limitations (Ill. Rev. Stat. 1981, ch. 110, pars. 13—214(a), (b)) was applicable; (2) whether the trial court erred when it ruled that the construction statute of limitations had expired, barring the warranty claims; and (3) whether the 155 Harbor Drive Condominium Association is a third-party beneficiary of the construction subcontract entered into by Crescent Erection Company and Consolidated Aluminum Corporation, thereby enabling plaintiff to seek recovery from Crescent Erection Company for alleged construction defects.

We affirm.

BACKGROUND

This action arises out of the development of a condominium building located at 155 East Harbor Drive in Chicago, Illinois (hereinafter building). The contractors began construction on the building in 1973. The building was completed in 1975.

The original owner and developer was a joint venture composed of four entities known as the T.I.C. Venture parties. The T.I.C. Venture parties consisted of defendants T.I.C. Venture, Harbor Point Venture, Illinois Center Corporation, and Talman/Home Investments, Inc. Illinois Center Corporation was Harbor Point Venture's general partner. Talman/Home Investments, Inc., was Harbor Point Venture's limited partner. In July of 1976, Harbor Point Incorporated, a defendant in the trial court that is not a party to this appeal, became the successor in interest to T.I.C. Venture.

Defendants Elsa Benson, Inc. (hereinafter Benson), Consolidated Aluminum Corporation (hereinafter Conalco), and Crescent Erection Company (hereinafter Crescent) were subcontractors. Benson was the general contractor for the project. The contract with Benson to be the general contractor includes, but is not limited to, a standard form of agreement between owner and contractor, general conditions of the contract for construction (AIA Document A201), supplementary general conditions, general requirements specifications, and architectural, engineering and shop drawings. These various documents are hereinafter referred to as the "Benson contract." Benson hired Conalco as one of the subcontractors. The contract between Benson and Conalco incorporates by reference the terms and conditions of the Benson contract. Conalco worked on the curtain wall and subcontracted some of the work to Crescent.

The Benson contract made the following warranties to the future individual condominium unit owners:

"(i) ADDITIONAL CONSTRUCTION WARRANTY FOR CONDOMINIUM UNIT PURCHASERS:

1. The Contractor warrants the workmanship and materials in the individual apartment units ***. See Warranty Form to be furnished by the Owner to each unit apartment owner. This warranty shall also apply to the common and public elements ***.

2. The above warranty for Condominium Units does not supersede the general guarantee described by AIA General Conditions, article 13.2.2, but is in addition thereto ***.

(ii) WARRANTY TO CONDOMINIUM PURCHASERS:

It is a requirement under the Construction Contract Agreement that the Contractor assumes and accepts the total responsibility for fulfilling on behalf of Owner and he shall bind his Subcontractor to accept as their responsibility the work requirements [under the Owner's warranty] *** which shall be furnished to each Condominium Unit Apartment Owner.

(iii) LIMITATION ON DURATION OF CONTRACTOR'S WARRANTY OBLIGATIONS:

a. General Rule. Notwithstanding the provisions of Paragraphs 4A and 4B of the General Requirements, Paragraph 13.2.2 of the General Conditions, SGC-19 and SGC-20 (herein called 'Warranty Obligations'), the Warranty Obligations shall, subject to the provisions of Paragraph B below, commence and expire as follows:

1. Commence, as to each Condominium Apartment Unit, upon substantial completion of the Work therein, and expire one year from the Date of Substantial Completion of the Project.

2. Commence, as to the Work located in the portions thereof located at and below the lower 30 apartment floors, and not located in. a Condominium Apartment Unit, upon substantial completion of said lower 30 apartment floor, and expire one year from the date of Substantial Completion of the Project, and expire one year form the Date of Substantial Completion of the Project.

b. Exceptions. The provisions of Paragraph a, above, are subject to the following exceptions: (1) Warranties specified in the Contract Documents for periods longer than the period specified in Paragraph a, above, shall be for the periods specified ***.

(iv) *** [E]ach Condominium Unit Purchaser shall have the option of certain construction items, materials and equipment ***.

(v) Contractor and each Subcontractor shall assign to Owner or as the Owner may direct to the individual apartment condominium Owner, all manufacturer's warranties of material or equipment.

(vi) GUARANTEE [curtain wall]:

Before final payment is made, the Subcontractor shall guarantee in writing that all parts of his work meet with the specifica-

tion requirements and will be free from defects for a period of five years from the date of acceptance of the work."

The Benson contract also made the following guarantees:

"(vii) GUARANTEE [glass and glazing]:

Guarantee period shall be five (5) years from date of acceptance by Architect or original glazing work requirements. Insulated glass units shall in addition carry a twenty (20) year warranty from the manufacturer.

(viii) Contractor and each Subcontractor guarantees to Owner that, whether furnished by Contractor or any Subcontractor, the labor used in performing the Work on the Project, and the material sand equipment incorporated into the Project, will be of good workmanship, free of defects, and fit for the use intended therefor.

(ix) The guaranties referred to in 4A shall continue for the period of one (1) year from and after the date Architect certifies that Project to be completed unless otherwise specifically noted for a longer period. Should any defects in the work, materials, or equipment develop within the period of the guaranty, Contractor and the Subcontractor who furnished the defective work, materials or equipment shall, at their expense and at no cost to Owner, correct the same to Architect's and Owner's satisfaction, including the repair of any other work damaged or otherwise affected by doing the corrective work."

The contract between Conalco and Benson incorporated by reference the terms and conditions of the Benson contract. In addition to its incorporation of the nine aforementioned provisions of the Benson contract, the Conalco contract established a "warranty fund" to serve "as security for the performance by Subcontractor of Warranty Service to Condominium purchasers, and all other warranties of Subcontractor contained in the Benson Contract." Another provision provided:

"[A]ll materials shall be new and both workmanship and materials shall be of good quality. Should any imperfect workmanship or material or other faults appear within the time period specified in SGC-10A, which in the judgment of the Owner and/ or Contractor arise out of improper material or workmanship, the Subcontractor shall correct and make good any such fault at his own expense, and in case of failure so to do, the Contractor may do said work and replace said material and recover from the Subcontractor the cost thereof."

The contract between Conalco and Crescent contained a provision in which Crescent "agree[d] to be bound by the Subcontract between [Conalco] and [Benson] and the general conditions, drawings and specification referred to therein." Crescent also agreed to honor the warranty obligations to the individual condominium unit owners which were contained in the Benson contract.

In July of 1976, T.I.C. Venture sold some of the units in the building. Upon the sale of those units, T.I.C. gave a "Certificate of Warranty" against latent construction defects. The written warranty to the condominium purchasers was signed by the developer. The warranty made the following provisions:

> "[F]or a period of one (1) year from the date of this warranty set fourth [sic] below, against latent defects arising out of faulty workmanship or material ***.
>
> The foregoing warranty shall also apply to the Common Elements of the condominium in which the Purchased Unit is located, except that such warranty shall in all events terminate upon the expiration of one (1) year from the date of substantial completion of the affected portion of the Common Elements."

In addition, the warranty made the following express limitations in bold type: "This warranty is in lieu of all other warranties of seller, express or implied, and inures only to the benefit of the purchaser who has signed and approved this warranty."

Furthermore, a section entitled "Warranty Exclusions" provided that "[w]arranty service is not available for the Common Elements after one (1) year from the date of substantial completion of the affected portion thereof, even though Purchaser may not have owned a Purchased Unit during the warranty period."

Finally, under the section entitled "Other Terms," the warranty stated that "[n]o steps taken by Seller to correct defects shall act to extend the warranty beyond the warranty period."

After the units were sold, plaintiff noticed defects in the curtain wall and the window units. The building curtain wall failed to properly keep water and air out of the condominium units, and there was excessive breaking and fogging of certain window units. On February 17, 1982, the 155 Harbor Drive Condominium Association (hereinafter plaintiff or Association) filed a complaint. The Association filed this complaint seven years after the defects became apparent. The Association named the following four defendants: Harbor Point Incorporated; Benson; Conalco; and WDS, Inc., as the alleged successor in interest to Crescent. Crescent was later substituted for WDS as a defendant after plaintiff and WDS agreed that Crescent was the

proper party to this action. This change was made in an agreed order dated November 1, 1985.

Plaintiff alleged in the complaint that there were defects in the window units and the curtain wall of the building.' Plaintiff also maintained that it was a third-party beneficiary to the developer's contract with Benson, Benson's contract with Conalco, and Conalco's contract with Crescent. Harbor Point Incorporated, Benson, Conalco, and Crescent attempted to repair the window units and the curtain wall.

The contract with Benson identified "each Condominium Unit Apartment Owner" as having rights directly against the contract under the warranty to be given to each unit owner by Harbor Point Incorporated. The agreement provided that "the contractor assumes and accepts the total responsibility for fulfilling on behalf of Owner and shall bind his Subcontractor to accept as their responsibility the word requirements [under the Owner's warranty] *** which shall be furnished to each Condominium Unit Apartment Owner." Furthermore, the contract provided that "[t]he Contractor warrants the workmanship and materials in the individual apartment units."

In addition, the general contract provided that the subcontractors Conalco and Crescent were to perform warranty work for and on behalf of each condominium purchaser, and that a "Warranty Fund" would be established "as security for the performance by Subcontractor of Warranty service to Condominium purchasers, and all other warranties of Subcontractor contained in the Benson Contract."

The Association filed its first amended complaint on June 15, 1984. The first amended complaint alleged breaches of implied and express warranties, and negligence in the design and installation of the building's curtain wall. Plaintiff also requested damages in excess of $3 million from Conalco, Crescent and T.I.C. Venture. Plaintiff also joined Sudler & Company, the building manager, as a defendant.

Benson, Conalco and WDS later moved to dismiss the claims against them on August 17, 1984, pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615). The motion was based on the theory that plaintiff's claims were only valid against the developer, and that the Association failed to plead facts sufficient to establish that it was a third-party beneficiary. The trial court dismissed the claims against these defendants. The court held that the Association was not a third-party beneficiary of the contract and warranties given by Benson and Conalco. After considering additional information, the court confirmed the dismissal on June 7, 1985.

On June 24, 1985, the Association filed its second amended complaint. The Association alleged that the developer and the contractor defendants breached the implied warranty of habitability. The Association also contended that the developer wrongfully refused to file a third-party action against the contractor defendants.

On July 24, 1985, Benson, Conalco, and WDS moved to dismiss the Association's implied warranty claim on the grounds that the action was appropriate only against the developer or the developer's predecessors in interest. On January 6, 1986, the court granted Conalco and Crescent their motions to dismiss the implied warranty of habitability claims. However, Benson's motion to dismiss was denied. Benson filed a motion to reconsider the court's order denying the motion to dismiss on January 30, 1986. On March 5, 1986, the court granted Benson's motion to reconsider and motion to dismiss.

Plaintiff filed an additional amended complaint on March 5, 1986. Plaintiff named T.I.C. Venture, Harbor Point Venture, Illinois Center Corporation, and Talman/Home Investments as additional defendants.

T.I.C. Venture later moved to dismiss on April 9, 1986. T.I.C. Venture filed additional motions to dismiss pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 2—615, 2—619) on March 19, 1987. In addition, Crescent moved to dismiss on May 18, 1987, and May 26, 1987, and Benson filed a motion to dismiss on May 26, 1987. The courts granted Benson's and Crescent's motions to dismiss on June 19, 1987.

Plaintiff filed its fifth amended complaint on July 14, 1987. In this amended complaint, plaintiff alleged that the problems with the walls and the window units became apparent "within one year after substantial completion of construction of the Building in July, 1975." Plaintiff also alleged that it noticed that additional symptoms, evidencing a construction design defect at various times up to April 1984.

Benson filed a motion to dismiss on the grounds that the Association's naming of the T.I.C. Venture parties as defendants relieved Benson of any responsibility pursuant to the implied warranty of habitability. On June 19, 1987, the court dismissed all of the claims against Crescent, Conalco and Benson.

T.I.C. Venture also moved to dismiss the case pursuant to section 2—619 of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 2—619.) T.I.C. Venture contended that the action against it was barred by the expiration of the relevant statute of limitations period. This motion was argued on June 19, October 30, and December 30, 1987.

On December 30, 1987, the trial court granted T.I.C. Venture's motion to dismiss counts I and II of the fifth amended complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—619). Judge Gomberg held that these claims were not filed within the applicable four-year statute of limitations pursuant to section 13—214 of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 13—214.) Judge Gomberg also made the following ruling: (1) the construction design defects complained of arose out of acts or omissions in the planning, design, supervision, and management of the building's construction; (2) that the construction statute of limitations applied to plaintiff's express and implied warranty claims; and (3) that plaintiff would, as a matter of law, be deemed to have known of the latent defects no later than February 17, 1982, the date that the suit was filed with respect to those defects.

On August 3, 1988, the T.I.C. Venture parties filed a request for a finding with respect to the Association's claims against them pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). The Association responded by seeking certification of its claims against the T.I.C. Venture parties and the contractor defendants. On September 22, and November 3, 1988, the trial court made these final judgments appealable by virtue of the entry of three Rule 304(a) orders. This appeal followed.

Four counts of the verified fifth amended complaint are at issue in this appeal. Counts III and VI allege that Benson, Conalco, and Crescent have failed or refused to replace the defective window "lites" and defective curtain wall pursuant to the express warranties in the Benson contract, the Conalco contract, and the Crescent contract, notwithstanding repeated requests by the Association, and are therefore in breach of the express warranties contained therein. Count IX alleges breach of warranty with respect to defective curtain wall repairs. Count XI states that defendants breached their implied contractual obligations to plaintiff to design, manufacture, construct, install and supervise the installation of the window units and curtain wall in such a manner as to conform to the Benson contract's requirements and specifications.

### OPINION

### I

First, plaintiff contends that the court erred when it ruled that the breach of warranty claims were acts arising out of the construction of a building and that the construction statute of limitations was

applicable. (Ill. Rev. Stat. 1981, ch. 110, par. 13—214.) Plaintiff reasons that the statute does not apply because the language of the statute means the statute encompasses only causes of action which depend upon an allegation that a defendant did or did not do something that is described in the statute. The fact that the claim may simply arise out of a described activity is not sufficient to bring the claim within the statute based upon the express language of the statute itself. Plaintiff also maintains that landowners and developers are not subject to the construction statute of limitations. Plaintiff relies upon *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, *C.S. Johnson Co. v. Champaign National Bank* (1984), 126 Ill. App. 3d 508, and on a statement made by then Representative Leinenweber in the course of legislative debate prior to the passage of the construction statute of limitations.

Defendants maintain that landowners and developers come within the ambit of the construction statute of limitations provided that they participate in the design, planning, supervision, observation, or management of construction. Defendants assert, and the trial court agreed, that the construction statute of limitations automatically applied because the warranty/repair contract claim involved even the subject of a defect arising out of construction.

The construction-design management and supervision statute makes the following provision:

"(a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 2 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission.

(b) No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 12 years have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to expiration of 12 years from the time of such act or omission shall in no event have less than 2 years to bring an action as provided in subsection (a).

\* \* \*

(d) Subsection (b) shall not prohibit any action against a defendant who has expressly warranted or promised the im-

provement to real property for a longer period [which exceeds the statute of limitations,] from being brought within that [longer warranty] period." (Ill. Rev. Stat. 1981, ch. 110, par. 13—214(a), (b), (d).)

The word "person" as used in this section "means any individual, any business or legal entity, or any body politic." Ill. Rev. Stat. 1981, ch. 110, pars. 13—214 (hereinafter the statute).

■ The fundamental rule of statutory interpretation and construction is that the true intent of the legislature must be ascertained and given effect. (*General Motors Corp. v. Industrial Comm'n* (1975), 62 Ill. 2d 106, 112; *C.S. Johnson Co. v. Champaign National Bank* (1984), 126 Ill. App. 3d 508, 510.) "The language used in a statute is the primary source for determining this intent, and where that language is certain and unambiguous, the proper function of the courts is to enforce the statute as enacted." (*General Motors Corp.*, 62 Ill. 2d at 112; see also *C.S. Johnson Co.*, 126 Ill. App. 3d at 510.) "Absent statutory definitions indicating a different legislative intent[], courts will assume that words have their [plain,] ordinary and popularly understood meaning." (*General Motors Corp.*, 62 Ill. 2d at 112.) "Where the statutory language does not adequately convey the legislative intent, the courts may look to the legislative history." *C.S. Johnson Co.*, 126 Ill. App. 3d at 510.

■ We do not need to look to the legislative history of this statute in the instant case. The plain, clear meaning of the pertinent provisions of the statute is that the statute is applicable to all "[a]ctions based upon *** contract *** in the *** observation or management of construction, or construction of an improvement to real property." (Ill. Rev. Stat. 1981, ch. 110, par. 13—214(a).) Subsection (d) of the statute goes so far as to permit actions based upon contract after the statute of limitations has expired where a defendant has expressly warranted the improvement of real property. Ill. Rev. Stat. 1981, ch. 110, par. 13—214(d).

■ This court recently ruled that "[s]ection 13—214 encompasses *all actions* against persons involved in the construction-related activities enumerated in the statute." (Emphasis added.) *American National Bank & Trust Co. v. Booth/Hansen Associates, Ltd.* (1989), 186 Ill. App. 3d 865, 867-68.

■ Accordingly, we hold that the statute is applicable to the instant case because the claim involves an action based upon a warranty, which is a contract, against persons who made repairs and were therefore involved in the construction of an improvement to real property.

Plaintiff's reliance upon *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, and *C.S. Johnson Co. v. Champaign National Bank* (1984), 126 Ill. App. 3d 508, is misplaced because both cases are distinguishable from the case at bar. In *Skinner*, a State agency brought an action for damages arising out of a construction defect against various defendants, including a surety. The issue in *Skinner* was whether the construction statute applied to the surety when there was no involvement by the surety in any of the acts enumerated by the statute. The Illinois Supreme Court held that the statute did not apply because the issuance of a surety bond did not qualify as an act or omission in the design, planning, supervision, observation, or management of construction. In the instant case, T.I.C. Venture, unlike the surety in *Skinner*, had direct, significant, and undisputed involvement in the activities set forth in the statute. The record reveals that T.I.C. Venture engaged in multiple acts of planning and on-site supervision of the construction.

Plaintiff's reliance upon *C.S. Johnson Co.* is also inappropriate. In *C.S. Johnson Co.*, this court held that there was no evidence in the pleadings that the landowner engaged in any of the construction activities set forth in the statute. For that reason, the court held that the upstream landowner could be sued for having caused flooding to downstream properties even though the ultimate cause of the flooding was alleged to be a construction defect. Accordingly, *C.S. Johnson Co.* is not authority for the proposition that owners of real property, merely because of their status, are not subject to the construction statute. *C.S. Johnson Co.* stands for the proposition that where landowners do not engage in the statute's enumerated activities, they do not have the protection of the statute's limitation periods.

For the aforementioned reasons, we affirm the trial court's ruling that the breach of warranty claims were acts arising out of the construction of a building, encompassed by the statute.

## II

Plaintiff's second contention is that the trial court erred when it ruled that the statute had expired, barring its claims for a breach of an express warranty and a breach of the implied warranty of habitability. Plaintiff maintains that the court should have applied the statute retroactively, as amended in 1985. The amended statute provides for a four-year statute of limitations for the bringing of an action from the date that the act or omission was, or should reasonably have been, known. (Ill. Rev. Stat. 1985, ch. 110, par. 13—214(a).) Defendant maintains that each warranty claim is time barred by virtue of the

two-year construction statute of limitations (Ill. Rev. Stat. 1981, ch. 110, par. 13—214(a)), which was applicable at the time this suit was first filed.

◼ The Illinois Supreme Court has held that "when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed." *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171; see also *People ex rel. Skinner v. Graham* (1988), 170 Ill App. 3d 417, 429.

◼ Our supreme court has held that "an amendment which extends a statute of limitations will not be applied retroactively so as to revive a cause of action which had already been barred by the expiration of the original limitation period." (*Hupp v. Gray* (1978), 73 Ill. 2d 78, 83; see also *People ex rel. Skinner v. Scott* (1988), 172 Ill. App. 3d 790, 797.) "In [the] absence of express language declaring otherwise, an amendatory act is ordinarily construed as being prospective in its operation. [Citations.] This general rule is based upon the principle that the legislature may not impair the obligation of contracts [citation] or interfere with vested substantive rights." *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390; *Weisberg v. Royal Insurance Co. of America* (1984), 124 Ill. App. 3d 864, 867-68.

The trial court ruled that plaintiff knew both of its injury and that the injury was wrongfully caused when it filed suit on February 17, 1982. In so ruling, Judge Gomberg made the following statement:

"[I]n 1982 the filing of the lawsuit indicated as a matter of law *** that the plaintiff[] should have known of the alleged negligence of the additional defendants when they filed suit against the subcontractors and sub-subcontractors contracted with."

◼ The facts establish that the applicable statute of limitations had expired. The record shows that plaintiff knew of T.I.C.'s alleged acts and omission at least as early as July of 1976 and certainly no later than February 1982, when it filed suit against defendants other than T.I.C. entities. Plaintiff has admitted that it became aware of defects in window units and curtain walls within one year of the July 1975 date of substantial completion of the building. Plaintiff has also admitted that it knew of T.I.C.'s existence and that it gave T.I.C. timely written notice of the defects under the warranty. Plaintiff first filed suit in February 17, 1982, 6½ years after substantial completion of the building and 5½ years after the written warranty had expired. When plaintiff first filed suit, it failed to name any of the T.I.C. entities as party defendants on January 28, 1986. Plaintiff first named

the T.I.C. Venture parties as defendants on January 28, 1986, approximately four years after the first complaint was filed. Plaintiff should have filed its action no later than February 18, 1984, two years from the date the suit was first filed. By the time the statute was amended, plaintiff's claims filed on January 28, 1986, against T.I.C. were already time barred by the existing statute of limitations.

We cannot give the 1985 amendment retroactive effect. We must apply the statute as written in 1981 because it was applicable when the instant action commenced in 1982. Accordingly, we find that the 1985 amendment, which extended the statute to four years, does not revive the statute of limitations which had previously expired in 1984. We affirm the trial court's finding that the construction statute of limitations on the warranty claims expired.

### III

Finally, plaintiff maintains that it is entitled to recover its losses on account of these warranty violations because it was a direct and intended third-party beneficiary of the contracts between Benson, Conalco, and Crescent. Plaintiff argues that it is a third-party beneficiary of the contract between Benson and T.I.C. Venture because the contract makes repeated references to the individual condominium unit owners who comprise the Association and their warranty rights.

Plaintiff maintains that it is a third-party beneficiary of the contract between Benson and Conalco, first, because it incorporates by reference nine warranty and guaranty provisions of the contract between Benson and T.I.C. Venture; second, because the Conalco contract established a "warranty fund" as a security for the performance by the subcontractor of warranty service to the condominium purchasers; and third, because the contract between Conalco and Benson guaranteed the materials and workmanship used by Conalco. Plaintiff argues that these provisions manifest the parties' intent that plaintiff directly benefit from the duties that Conalco assumed under its contract. Furthermore, plaintiff argues that the fact that Benson secured from Conalco an agreement to establish the warranty fund is further proof that Benson understood that its own contract with T.I.C. Venture was made for the benefit of plaintiff.

Plaintiff also contends that the Crescent contract includes a provision reflecting the intention to make plaintiff a third-party beneficiary of the Benson contract. Plaintiff maintains that this intent was manifested by a provision in which Crescent agreed to be bound by the general conditions of the subcontract between Conalco and Benson,

and to honor the warranty obligations to the individual condominium unit owners which were contained in the Benson contract.

Plaintiff relies upon *Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, *Kravitz v. County of Lake* (1978), 62 Ill. App. 3d 101, *People ex rel. Resnick v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, *Briarcliffe West Townhouse Owners Association v. Wiseman Construction Co.* (1983), 118 Ill. App. 3d 163, and *Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653.

Defendants Benson, Conalco, and Crescent all maintain that it was proper for the trial court to dismiss the third-party beneficiary claims because there was no language or express provision in the construction contracts which manifested the parties' intent to confer a direct benefit on the Association by making it a third-party beneficiary.

■ In order to determine whether another is a third-party beneficiary, courts look to the contract to determine the intent of the parties. (*Ball Corp. v. Bohlin Building Corp.* (1989), 187 Ill. App. 3d 175, 177.) Only third parties who are direct beneficiaries have rights under a contract. (*Alaniz v. Schal Associates* (1988), 175 Ill. App. 3d 310, 314; *Ball Corp.*, 187 Ill. App. 3d at 177.) It is not enough that the third party will only reap incidental benefits from the contract. (*Ball Corp.*, 187 Ill. App. 3d at 177.) "The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract." (*Wheeling Trust & Savings Bank v. Tremco, Inc.* (1987), 153 Ill. App. 3d 136, 140.) A third party is a direct beneficiary when the contracting parties have manifested an intent to confer a benefit upon the third party. *Ball Corp.*, 187 Ill. App. 3d at 177.

■ With respect to construction contracts, this court has held that "[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the construction of the building in that they will be users of it. The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear." *Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 373.

"Liability to a third party must affirmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution, and cannot be expanded or enlarged simply because the situation and circumstances justify or demand further or other liability." *Ball Corp. v. Bohlin Building Corp.* (1989), 187 Ill. App. 3d 175, 177; see also *Midwest Concrete Products Co. v. LaSalle National Bank* (1981), 94 Ill. App. 3d 394, 397.

■■ "In Illinois, the promisor's [intent] must be evidenced by an express provision in the contract identifying the third-party beneficiary." (*Wheeling Trust & Savings Bank v. Tremco, Inc.* (1987), 153 Ill. App. 3d 136, 140.) Courts require an express provision because "there is a strong presumption that parties to a contract intend that the contract's provisions apply to *only* them and not to third parties. In order to overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration." (Emphasis added.) *Ball Corp.*, 187 Ill. App. 3d at 177.

■■ We find that the trial court properly dismissed plaintiff's third-party beneficiary claims. Plaintiff, has the burden of proving that defendants intended to confer a direct benefit upon the Association. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 56.) Plaintiff has failed to meet this burden. The Association has failed to identify any language in the subcontract which constitutes a virtual express declaration to overcome the presumption that the parties contracted only for themselves. The subcontracts make no reference to the Association or its members, and do not express an intent to directly benefit either the Association or its members. The provisions in the construction contracts regarding guarantees to be provided by the contractor and the subcontractors do not mention the unit owners. There is no question that the parties *** were aware that the building was being built for subsequent purchasers. However, "[i]t is not enough that the parties *** know, expect or even intend that" such people may benefit or that they are referred to in the contract. *Waterford Condominium v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 373.

Plaintiff's reliance upon *Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, to show that it is a direct and intended beneficiary is inappropriate. In *Gothberg*, a party with a judgment against an insured for personal injuries sustained in an automobile accident brought a direct suit against the insurance agent who contracted to supply a public liability policy to the insured. The court distinguished automobile insurance policies as having unique "connotations extending to the general public above and beyond the private interests of the two contracting parties" and concluded that "automobile insurance is no longer a private contract merely between two parties." (*Gothberg*, 58 Ill. App. 2d at 386.) Furthermore, the insurance policy specifically provided that "[a]ny person *** who has secured such judgment *** shall thereafter be entitled to recover under this policy ***." *Gothberg*, 58 Ill. App. 2d at 387.

Plaintiff also misinterprets *People ex rel. Resnick v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381. In *Resnick*, the court required the declaration of intent to be so express that the contracts at issue fully identified the third party. In *Resnick*, the court held that the State of Illinois was a third-party beneficiary of a construction contract because said contract contained an unequivocally clear provision that the architect-subcontractor must consult with the " 'User,' " the State of Illinois, as well as the " 'Owner' *** to 'ascertain the requirements of [the] Project.' " (*Resnick*, 78 Ill. 2d at 386.) The contract also provided that the architect-subcontractor "revise the drawings, specifications and estimate in a manner satisfactory to Owner and User." (*Resnick*, 78 Ill. 2d at 386.) In addition, the contracts described the actual method of recovery for the third party. The contract specified that the architect-subcontractor "indemnifies and holds harmless Owner, User." (*Resnick*, 78 Ill. 2d at 386.) *Resnick* is distinguishable from the case at bar because the subcontracts in the instant case do not describe an actual method by which the Association may recover from the subcontractors.

For the aforementioned reasons, we affirm the judgment of the trial court.

Affirmed.

LINN and McMORROW, JJ., concur.