EAST PEORIA COMMUNITY HIGH SCHOOL DISTRICT No. 309, Plaintiff-Appellant, v. GRAND STAGE LIGHTING COMPANY *et al.*, Defendants-Appellees.

Third District   No. 3—91—0869

Opinion filed September 4, 1992.—Rehearing denied November 13, 1992.

Dennis R. Triggs and Thomas R. Davis, both of Miller, Hall & Triggs, of Peoria (William R. Kohlhase, of counsel), for appellant.

Bret A. Rappaport and Earle S. Rappaport, both of Schwartz, Cooper, Kolb & Gaynor, of Chicago, and William R. Kelly, of Peoria (Eric S. Rein, of counsel), for appellees Grand Stage Lighting Company and Union Roofing Co., Inc.

Randall Ray, of Sebat, Swanson, Banks, Garman & Townsley, of Danville, for appellee Shick Supply and Equipment Company.

Daniel G. O'Day, of Cusack & Fleming, P.C., of Peoria, for appellee The Pipco Companies, Ltd.

Andrew W. Covey, of Baymiller, Christison & Radley, of Peoria, for First National Bank of Peoria.

JUSTICE GORMAN delivered the opinion of the court:

Defendants-counterplaintiffs-subcontractors filed actions against plaintiff-counterdefendant East Peoria Community High School District No. 309 to collect on amounts unpaid by the general contractor for certain work performed on the school. The trial court granted summary judgment for defendants. We affirm.

In 1985, plaintiff East Peoria High School District No. 309 contracted with Tousley-Iber to oversee a life safety survey and related improvements of some high school buildings. Tousley-Iber contracted with defendant Union Roofing for the roof work; with defendant PIPCO Companies Ltd. for the plumbing and electrical work; with defendant Grand Stage Lighting for stage renovation work; and with defendant Shick Supply and Equipment Company for the locker replacement. All of the subcontractors performed the work contracted for. The original unpaid amounts were as follows: Union Roofing—$63,042.61; PIPCO—$15,467.07; Grand Stage—$145,949; and Shick—$22,782.

Plaintiff made progress payments to Tousley-Iber. Tousley-Iber did not make any payments to defendant Shick or to defendant Grand Stage Lighting. Tousley-Iber paid defendant Union Roofing and defendant PIPCO for part of the work they performed.

Litigation ensued between the parties. The only claims at issue here are the claims by the subcontractors that they were third-party beneficiaries of the agreement between plaintiff and Tousley-Iber and that "An Act in relation to bonds of contractors entering into contracts for public construction" (Bond Act) (Ill. Rev. Stat. 1987, ch. 29, par. 15 *et seq.*) mandated that plaintiff require Tousley-Iber to obtain a payment bond. Plaintiff raised certain affirmative defenses. The court granted each defendant's motion for summary judgment and held in its February 1990 order that, among other things, the contract was subject to the Bond Act and that the subcontractors were third-party beneficiaries of the contract between plaintiff and Tousley-Iber. As a result of the court's October 1991 order entered pursuant to the parties' stipulation, defendants Union Roofing, Grand Stage, and PIPCO received partial payment against their lien claims. The amounts now claimed to be due are as follows: Union Roofing—$53,263.34; PIPCO—$13,067.80; Grand Stage—$123,309.27; and Shick—$22,782.

Plaintiff now appeals.

The first issue for review is whether the Bond Act mandated that plaintiff require Tousley-Iber to obtain a payment bond.

The Bond Act provides, in pertinent part, as follows:

"All officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or any political subdivision thereof shall require every contractor for such work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into such contract, as the case may be, with good and sufficient sureties." Ill. Rev. Stat. 1987, ch. 29, par. 15.

"Every person furnishing material or performing labor, either individually or as a sub-contractor for any contractor, with the State, or a political subdivision thereof where a bond or letter of credit shall be executed as provided in this Act, shall have the right to sue on such bond or letter of credit *** provided, however, that this Act shall not be taken to in any way make the State, or the political subdivision thereof entering into such contract, as the case may be, liable *** to any greater extent than it was liable under the law as it stood prior to the adoption of this Act." Ill. Rev. Stat. 1987, ch. 29, par. 16.

As a preliminary matter, Tousley-Iber was a general contractor even though it styled itself a "construction manager." It hired subcontractors and provided no unique services.

Plaintiff argues that the liability of a public body to a subcontractor is controlled by the Mechanics Lien Act (Ill. Rev. Stat. 1987, ch. 82, par. 1 *et seq.*) and the Bond Act, with the latter containing a critical proviso. The proviso states that the Bond Act "shall not be taken to in any way make the State, or the political subdivision thereof entering into such contract *** liable *** to any greater extent than it was liable under the law as it stood prior to the adoption of this Act." (Ill. Rev. Stat. 1981, ch. 29, par. 16.) Pointing especially to the inclusion of the words "in any way," plaintiff asserts that the proviso defeats the subcontractors' contract claims here. Plaintiff argues that *Emulsicoat, Inc. v. City of Hoopeston* (1981), 99 Ill. App. 3d 835, 425 N.E.2d 1349, supports its position that the language is to be read broadly.

■ We are not persuaded by plaintiff's argument. First, we note that "as a remedial statute, the Bond Act is liberally construed to effectuate the General Assembly's intent to encourage

and protect artisans, materialmen, and tradesmen." (*Chicago Housing Authority v. United States Fidelity & Guaranty Co.* (1964), 49 Ill. App. 2d 407, 199 N.E.2d 217.) Furthermore, *Western Waterproofing Co. v. Springfield Housing Authority* (C.D. Ill. 1987), 669 F. Supp. 901, squarely addressed the issue presented in the instant case. There, the court had to determine whether a third-party beneficiary contract action could be asserted against a public entity where the entity had failed to procure a payment bond from a general contractor. The court held that the Bond Act should be read into the contract between the housing authority and the general contractor. The court there noted that "[u]nder Illinois law 'statutory provisions applicable to a contract *** are deemed to form a part of that contract and must be construed in connection therewith.' " (*Western Waterproofing*, 669 F. Supp. at 903, quoting *DC Electronics, Inc. v. Employers Modern Life Co.* (1980), 90 Ill. App. 3d 342, 348, 413 N.E.2d 23.) "[B]ecause the Bond Act was established to achieve the same remedial goal as the mechanic's lien in a public works situation, it follows that the Bond Act should be read into the public works contract between [the housing authority] and [the general contractor], requiring the procurement of a payment bond as required by the Bond Act." 669 F. Supp. at 904.

In contrast, the *Emulsicoat* case dealt only with a negligence claim against two municipalities. The court there specifically examined the Bond Act's proviso and held that it "represent[ed] a very cautious approach by the legislature to the question of tort immunity of municipalities." (*Emulsicoat*, 99 Ill. App. 3d at 838.) Thus, we reject plaintiff's argument and hold that the Bond Act mandated that plaintiff require Tousley-Iber to obtain a payment bond.

The second issue for review is whether the subcontractors were third-party beneficiaries of the contract between plaintiff and Tousley-Iber.

■ The general rule is that if a contract is entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. (*Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 475 N.E.2d 1327.) Moreover, "[o]ne is a third-party beneficiary of a contractual provision if the parties to a contract, or at least the promisee *** intended that the agreement confer a benefit on him. [Citation.] That intent is ' "to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution. [Citation.]" ' " *Bates & Rogers Construction Corp. v. Greeley & Hansen* (1985), 109 Ill. 2d 225, 232, 486 N.E.2d 902.

In *Metro East*, a regional sewer agreement provided that the municipality "shall reimburse" the other municipal corporations "for fees which such party has paid or become contractually obligated to pay to its attorneys" for work related to the agreement. It also specified the "reimbursable amount due." The municipality refused to pay the attorney. The court held that the attorney was an intended beneficiary under the contract because the agreement expressly referred to attorney fees and the reference was made in a context showing that the parties anticipated that attorney services would be provided on credit and that they desired to make express arrangement for payment of those services.

Furthermore, in *Town & Country Bank v. James M. Canfield Contracting Co.* (1973), 55 Ill. App. 3d 91, 370 N.E.2d 630, it was held that a subsubcontractor was an intended third-party beneficiary of a contract between his subcontractor and the general contractor. The basis for that court's decision was *Avco Delta Corp. v. United States* (7th Cir. 1973), 484 F.2d 692, in which the Seventh Circuit held that a materialman was a third-party beneficiary of a promise by a general contractor to provide an affidavit of payment before receiving the retainage from the owner and a promise that the owner could if it chose pay any liquidated claims that arose out of the contract and charge the general contractor.

As noted earlier, "under Illinois law, statutory provisions applicable to a [construction] contract *** are *** a part of that contract and must be construed in connection [with such laws]." (*Western Waterproofing v. Springfield Housing Authority* (C.D. Ill. 1987), 669 F. Supp. 901, 903.) As a policy matter, it would be meaningless here to read the Bond Act requirements into the construction manager agreement without reading in third-party rights to enforce that statute.

Furthermore, in the construction manager agreement, Tousley-Iber agreed at paragraph 11.3 to "promptly pay all amounts due" the trade contractors upon receipt of any payment from plaintiff. In paragraph 2.2.5, Tousley-Iber agreed to "develop and implement a procedure for the review, processing, and payment of applications by Trade Creditors for progress and final payment."

Also, in paragraph 11.3 of the agreement, plaintiff and Tousley-Iber agreed that before issuance of final payment, the latter was required to submit satisfactory evidence that all indebtedness had been paid. As in *Metro East* and *Avco*, these promises regarding payment show that the parties anticipated that subcontractors' services would be provided on credit and that the parties wanted to

make express arrangements for payment to them. Therefore, we hold that defendants here were third-party beneficiaries of the contract between plaintiff and Tousley-Iber.

The third issue for review is whether plaintiff has standing to assert that the contract is void because of plaintiff's failure to comply with competitive bidding procedures.

■ Plaintiff argues that the construction manager agreement is void because it was not awarded after due advertisement and after obtaining competitive bids. Defendants assert that plaintiff lacks standing to raise this argument and is estopped from raising the argument. We agree with defendants. Where a suit alleges injury due to a violation of a statute, the doctrine of standing requires that the plaintiff be one of a class designed to be protected by the statute, or for whose benefit the statute was enacted. Under *Cardinal Glass Co. v. Board of Education of Mendota Community Consolidated School District No. 259* (1983), 113 Ill. App. 3d 442, 447 N.E.2d 546, the third district held that the school bidding procedures were intended to protect taxpayers and bidders. Thus, plaintiff does not now have standing to raise the argument that the contract is void.

Furthermore, estoppel may be applied against school districts. The test is whether, under all the circumstances of the case, the affirmative acts of the district have created a situation where it would be inequitable and unjust to permit it to deny what it has done or permitted to be done, then the doctrine may be applied against it. (*Stahelin v. Board of Education, School District No. 4* (1967), 87 Ill. App. 2d 28, 230 N.E.2d 465.) There it was held that the school board could not assert, on one hand, that it was entitled to a number of credits which were to be adjudicated on completion of school construction under a contract requiring contract changes to be in writing and to have prior board approval and, on the other hand, not be obligated for any of the extras to be adjudicated in the same manner because it did not vote by yeas and nays on expenditures for extras as required by statute. Here, plaintiff's acts of drafting the agreement and then receiving the benefits thereunder estop it from arguing now that the contract is void.

Finally, plaintiff argues that the trial court erred in finding that the construction manager was subject to the Bond Act but not the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 1—1 *et seq.*).

■ This argument is without merit. Plaintiff cites no authority that these statutes must be read together. The two statutes are not part of the same act. Moreover, they were designed to effectuate

different policies. The Bond Act requires that a public body require a contractor to obtain a payment bond to protect subcontractors. The School Code generally requires competitive bids to assure that taxpayers pay the lowest responsible price.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

BARRY, P.J., and McCUSKEY, J., concur.