# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3229

CITY OF YORKVILLE, also known as
UNITED CITY OF YORKVILLE
FOR THE USE AND BENEFIT OF
AURORA BLACKTOP INCORPORATED,

*Plaintiff-Appellant,*

*v.*

AMERICAN SOUTHERN INSURANCE COMPANY and
OCEAN ATLANTIC SERVICE CORPORATION,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-01473—**John W. Darrah,** *Judge.*

ARGUED MARCH 29, 2011—DECIDED AUGUST 12, 2011

Before ROVNER, WILLIAMS, and HAMILTON, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Aurora Blacktop ("Aurora")
filed this lawsuit, claiming that it is entitled to the
proceeds of certain bonds issued by American Southern
Insurance Company ("American Southern") in favor of

the City of Yorkville. The district court found that Aurora did not have standing to sue, and dismissed the case. We find that Aurora is not a third-party beneficiary to the bonds because there is no language in the bonds suggesting that American Southern's obligation runs to third parties. We affirm.

## I. BACKGROUND

This case started out as three different actions brought against Ocean Atlantic Services ("Ocean Atlantic") and American Southern in state court by three plaintiffs. The cases were removed to federal court by American Southern and consolidated. The district court's jurisdiction was premised on diversity of citizenship. Only Aurora appealed the judgment of the district court.

Ocean Atlantic is a real estate developer that was building the Westbury East Village subdivision in Yorkville, Illinois. According to the parties' representations at oral argument, as part of that project, Ocean Atlantic was required to make certain public improvements that would eventually be turned over to the City of Yorkville for maintenance. Yorkville Subdivision Control Ordinance § 8.02.01 requires a subdivider to post an irrevocable bond payable to the City of Yorkville "to assure the satisfactory installation of required improvements."

According to Aurora's complaint, Ocean Atlantic (the contractor) obtained a series of subdivision bonds from American Southern in order to satisfy the ordinance. On

June 15, 2006, American Southern (the surety) issued the subdivision bonds in favor of the City of Yorkville "for the purpose of guaranteeing the installation" of public improvements in the subdivision. All of the subdivision bonds (attached to Aurora's complaint) are identical, except for the amount insured and the specific improvements guaranteed. Each bond provides a list of events or conditions that would entitle the City of Yorkville to deem Ocean Atlantic in default. One of those conditions is "if the City of Yorkville has determined that the public improvements or other improvements covered by this [bond] have been or are likely to be the subject of liens or other claims by contractors, subcontractors or third parties." The bonds also provide that the City of Yorkville can make a demand on the bonds by "presenting the Surety with a letter from the City Clerk . . . demanding performance accompanied by the certificate of the City Clerk . . . certifying the basis for the default and demand on this Subdivision Bond."

Work on the subdivision commenced, and Ocean Atlantic hired Aurora (the subcontractor) to work on several public improvements. But the project stalled after Ocean Atlantic ran into financial difficulties, and the subdivision was never completed. Several subcontractors, including Aurora, were never paid for the work they performed. The subcontractors eventually recorded several mechanic's liens on the subdivision property in the amount allegedly owed by Ocean Atlantic.

On June 17, 2009, Ocean Atlantic wrote a letter to the City of Yorkville recommending that it redeem some of the bonds. In the letter, Ocean Atlantic explained that

there were "presently three foreclosures pending that will prevent the current owner from completing the [subdivision]." Ocean Atlantic recommended that the bond proceeds be placed into escrow to pay for the release of the mechanic's liens and to ensure the completion of the improvements.

On August 31, 2009, the City of Yorkville sent a letter to American Southern making a demand for payment on the subdivision bonds. But American Southern never paid up, and the City did not pursue the matter further (even though the bonds contain an attorneys' fees provision). Aurora then filed suit against Ocean Atlantic and American Southern, purporting to bring its case in the name of the City of Yorkville for its own benefit. Aurora contends that it should be paid out of the proceeds of the bonds.

The case was removed to federal court. American Southern filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The district court granted the motion, finding that Aurora did not have standing to assert claims on the bonds because it was not a third-party beneficiary to the bonds. Aurora appeals.

## II. ANALYSIS

### A. Appellate Jurisdiction

Early on in this appeal we were concerned that the order appealed from might not be a "final decision" within the meaning of 28 U.S.C. § 1291 because it appeared

that the district court's order failed to dispose of Aurora's case against Ocean Atlantic, the other defendant in this lawsuit. We ordered Aurora to explain why the appeal should not be dismissed.

Aurora filed a memorandum asserting that we have jurisdiction because the district court dismissed its complaint for lack of subject matter jurisdiction under Rule 12(b)(1) with prejudice, and entered judgment. Aurora also claimed, however, that the case was improperly removed to federal court. American Southern responded that it agreed with Aurora that the order dismissing Aurora's case is a final appealable order, but argued that Aurora waived the removal issue by failing to object below.

The district court dismissed Aurora's complaint with prejudice for lack of subject matter jurisdiction and closed the case by entering judgment. The dismissal of Aurora's lawsuit was final, and we have jurisdiction over this appeal. *Banks v. Sec'y of Ind. Family & Soc. Servs. Admin.*, 997 F.2d 231, 237 (7th Cir. 1993) ("This court has jurisdiction over this appeal because dismissal of an action for lack of subject matter jurisdiction is a final judgment."); *see also Hill v. Potter*, 352 F.3d 1142, 1144-45 (7th Cir. 2003) ("The test [for finality] is whether the district court has finished with the case."); *In re Slimick*, 928 F.2d 304, 307 n.1 (7th Cir. 1990) ("In an ordinary civil case, a complete act of adjudication ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").

Aurora also forfeited its challenge to American Southern's defective removal. Aurora claimed that removal

was improper because Ocean Atlantic never consented to removal, and the consent of all defendants is generally required to remove. A motion to remand a case on any basis other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal. 28 U.S.C. § 1447(c). Failure to join all defendants when a case is removed to federal court is a waivable procedural defect. *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 653 (7th Cir. 1998) (plaintiff forfeited claim that removal was improper because, although only one defendant signed the notice of removal, plaintiff did not raise the defect before the court within 30 days); *In re Cont'l Cas. Co.*, 29 F.3d 292, 294 (7th Cir. 1994) ("The plaintiff has a right to remand if the defendant did not take the right steps when removing, but the plaintiff also may accept the defendant's choice of a federal forum. Procedural defects in removal . . . may be waived or forfeited."). Because Aurora did not move to have the case remanded within 30 days, it forfeited its challenge to American Southern's removal. In fact, even if it had not, removal would have been proper because the parties disclosed at oral argument that Ocean Atlantic was never served and defendants who have not been served need not join in a removal petition. *See Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993).

**B.  Standing to Sue as Third-Party Beneficiary**

In this case, we must decide whether Aurora has standing as a third-party beneficiary to enforce the subdivision bonds at issue. "In essence the question of

standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues*." Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444-45 (7th Cir. 2009) (affirming dismissal of plaintiff's case under Rule 12(b)(1) upon finding that plaintiff did not have standing to sue on state law contract theory). The parties do not dispute that Illinois law applies. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 879 (7th Cir. 2005) ("In a case where subject matter jurisdiction in federal court is premised on diversity jurisdiction under 28 U.S.C. § 1332, the court applies the substantive law of the forum state.").

"A contract of a surety involves a direct promise to perform the obligations of another person in the event such person fails to perform as required by his contract." *Vee See Constr. Co., Inc. v. Luckett*, 430 N.E.2d 91, 93 (Ill. App. Ct. 1981). Aurora is not a party to the subdivision bonds (the surety agreement) since American Southern issued the bonds to Ocean Atlantic in favor of the City of Yorkville. But Aurora claims that it is an intended beneficiary and may therefore sue on the bonds.

In Illinois, if a contract is entered into for the direct benefit of a third person who is not a party to the contract, that person may sue on the contract as a third-party beneficiary. *Carson Pirie Scott & Co. v. Parrett*, 178 N.E. 498, 501 (Ill. 1931). The test is whether the benefit is direct, in which case the person may sue, or incidental, in which case the person may not. *Id.* The intent to benefit the third party must affirmatively appear from the language of the contract. *Carson*, 178 N.E. at 501. If the intent to benefit others is not explicitly provided for

in the contract, "its implication at least 'must be so strong as to be practically an express declaration.'" *Barney v. Unity Paving, Inc.*, 639 N.E.2d 592, 596 (Ill. App. Ct. 1994). The parties' intent is to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution. *Id.*

The Restatement (Third) of Suretyship and Guaranty provides some helpful guidance in determining whether a subcontractor is a third-party beneficiary to a suretyship agreement. The Restatement distinguishes between "payment" bonds and "performance" bonds. *See* RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTEE § 69(a) (1996). When a "payment" bond is involved, the contractor typically promises the owner of the project to pay for all labor and materials, and the surety agrees to be liable with respect to that promise. *Id.* The laborers and suppliers therefore have rights as third-party beneficiaries against the surety. *See id.* In contrast, when a "performance" bond is involved, there is no promise to pay laborers and suppliers of materials. *Id.* The surety promises to be liable only for the fulfillment of the contractor's duty. *Id.* The laborers and suppliers have no rights against the surety because the surety has not promised to fulfill the contractor's duty to them.[1] *Id.*

---

[1] These principles are illustrated in Restatement with the following examples:

> 1. P contracts to build a house for O. Pursuant to the contract, P and S both execute a payment bond to O
>
> (continued...)

In accordance with these general principles, Illinois courts tend to find third-party beneficiary status where an agreement contains language to the effect that the surety will be responsible to third parties if the contractor is unable to fulfill its obligation to them. In *Carson Pirie Scott & Co. v. Parrett*, for example, the Supreme Court of Illinois found that a supplier of hotel linens could sue as a third-party beneficiary on a contract between the hotel owners and a surety because the contract provided that the surety would pay for the goods if the hotel owners could not. 178 N.E. at 502-03. Likewise, in *Neenah Foundry Co. v. National Surety Corp.*, although the bond was labeled a "performance" bond, the surety had agreed to provide coverage "for the work performed *and for the payment of claims for labor performed and materials furnished*." 197 N.E.2d 744, 747 (Ill. App. Ct. 1964). The court gleaned from that language an intent to protect

---

[1] (...continued)
   whereby they promise O that all of P's debts for labor and materials on the house will be paid. P later employs C as a carpenter and buys lumber from L. C and L are intended beneficiaries of S's promise to O.

   2. P contracts to build a house for O, and to deliver the house free of liens. In connection with that contract, S provides a performance bond whereby S agrees to fulfill P's obligations pursuant to the construction contract. P later employs C as a carpenter and buys lumber from L, and fails to pay both of them. C and L have no rights against S.

*Id.*

the subcontractors, and noted that if the surety wanted to limit its liability it could have done so expressly. *Id.* at 748-49; *see also East Peoria Cmty. High Sch. Dist. No. 309 v. Grand Stage Lighting Co.*, 601 N.E.2d 972, 975 (Ill. App. Ct. 1992) (contractor's promise "to submit satisfactory evidence [to the school] that all indebteness had been paid" was intended to protect subcontractor who could not have obtained a mechanic's lien on a public project); *Avco Delta Corp. Canada Ltd. v. United States*, 484 F.2d 692, 702-05 (7th Cir. 1973) (subcontractors were entitled to sue on an agreement between a contractor and an owner because the contract provided for the creation of a "retainage account" that would be paid to the contractor only after the contractor provided an affidavit that stated that all bills for materials, labor, and supplies had been paid in full); *Phillips Co. v. Constitution Indem. Co. of Philadelphia*, 68 F.2d 304, 306 (7th Cir. 1933) (promise to "completely pay for said building" was intended to protect subcontractors).

Conversely, subcontractors are generally not accorded third-party beneficiary status where the surety agreement does not contain language suggesting that the surety's obligation to pay runs to third parties. In *Searles v. City of Flora*, the bond at issue simply stated that the surety would hold the city harmless and pay any loss and damage to the city occasioned by the failure or default of the contractor. 80 N.E. 98, 99-100 (Ill. 1906). The bond did not include any language concerning payment to third parties for labor or materials, and therefore the court concluded that unpaid subcontractors could not sue on the bond. *Id.; see also Young v.*

*Gen. Ins. Co. of Am.*, 337 N.E.2d 739, 740-41 (Ill. App. Ct. 1975) (bond stated that "no right of action shall accrue on this bond for the use of any person other than the Owner named herein" and therefore limited the liability of the surety to the owner); *In re T. Brady Mech. Servs. Inc.*, 129 B.R. 559, 561-62 (Bankr. N.D. Ill. 1991) (bond obliged surety to pay "claimants," defined as those having "a direct contract with the principal for labor or material," and because the subcontractors did not have "a direct contract with the principal" they were not third-party beneficiaries).

The subdivision bonds at issue here do not contain any language suggesting that Ocean Atlantic's obligation runs to anyone other than the City of Yorkville. The bonds state that they are "for the purpose of guaranteeing the installation" of various public improvements. There is no language, for example, to the effect that American Southern is guaranteeing payment for labor and materials. *Cf. Carson*, 178 N.E. at 502-03. There is also no language requiring that anyone other than the City of Yorkville be paid. *Cf. East Peoria*, 601 N.E.2d at 975 (clause required proof that subcontractor had been paid); *Avco*, 484 F.2d at 702-05 (contract required affidavit that materials and labor were paid for). In fact, the only reference to the subcontractors in the subdivision bonds is in a provision that states that the City of Yorkville may demand payment when it determines that the improvements covered by the bond have been or are likely to be the subject of liens or other claims by contractors, subcontractors, and third parties. This language, however, only specifies the circumstances in

which the City of Yorkville can make a demand on the bonds; it imposes no obligation on American Southern with respect to the subcontractors.

Aurora urges us to look to Ocean Atlantic's letter recommending that the City of Yorkville redeem the bonds, as well as to the City of Yorkville's demand letter, in determining whether the contracting parties intended to benefit the subcontractors. But Illinois law provides that the intent of the parties must be gleaned from the circumstances surrounding the parties at the time the contract is executed. *Bates & Rogers Constr. Corp. v. Greeley & Hansen*, 486 N.E.2d 902, 906 (Ill. App. Ct. 1985). The two letters were prepared between two and three years after the bonds were issued, and therefore shed little, if any, light on the intent of the parties at the time of contracting. Further, the bonds provide that "[t]he Surety's obligation to the City is based solely on this Subdivision Bond engagement between this Surety and the City and is not subject to instruction from our customer [Ocean Atlantic]." This language, which Aurora does not otherwise challenge, precludes consideration of Ocean Atlantic's letter.

Aurora also contends that the entire point of requiring a contractor to obtain a bond is to ensure that subcontractors are paid. But while the bonds may have been procured to ensure that the City of Yorkville eventually gets its public improvements clear of liens, this does not mean that American Southern's obligation under the bonds runs to the subcontractors. "Liability to a third-party must affirmatively appear from the contract's

language and from the circumstances surrounding the parties at the time of its execution . . . ." *Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E.2d 106, 107 (Ill. App. Ct. 1989). Here, it does not. And we cannot expand or enlarge American Southern's liability "simply because the situation and circumstances justify or demand further or other liability." *Id.* Moreover, it is not as if Aurora does not have a remedy if it cannot sue to enforce the bonds. Unlike in *East Peoria*, where the subcontractor could not have obtained a mechanic's lien, Aurora recorded a mechanic's lien on the subdivision property in the amount Ocean Atlantic owes to it. *Cf.* 601 N.E.2d at 975. In sum, because the subdivision bonds do not contain any language suggesting that American Southern will assume Ocean Atlantic's liability to the subcontractors in the event of Ocean Atlantic's default, the decision of the district court must be affirmed.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.