# Illinois Official Reports

## Appellate Court

---

***Stimeling v. Peoria Public School District 150*, 2018 IL App (3d) 170567**

---

| | |
|---|---|
| Appellate Court Caption | STEVEN STIMELING, Plaintiff-Appellant, v. PEORIA PUBLIC SCHOOL DISTRICT 150, a Municipal Corporation, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-17-0567 |
| Filed | July 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-MR-317; the Hon. James A. Mack, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Shane M. Voyles, of Springfield, for appellant.<br><br>Stanley B. Eisenhammer, Babak Bakhtiari, and Christopher L. Schaeffer, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, of Arlington Heights, for appellee. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices Holdridge and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Steven Stimeling, suffered an on-the-job injury while working as a "security officer" or "school resource officer" for defendant, Peoria Public School District 150 (District). When he returned to work three days later, he performed only clerical and administrative tasks. He continued working in a clerical and administrative role until the District terminated his employment approximately two years later. After his termination, plaintiff filed suit seeking benefits under the Public Employee Disability Act (Disability Act) (5 ILCS 345/1 (West 2016)) and Public Safety Employee Benefits Act (Benefits Act) (820 ILCS 320/10 (West 2016)). The parties filed and argued cross-motions for summary judgment. The motions disputed whether the District employed plaintiff as a "law enforcement officer" entitled to Disability Act and Benefits Act benefits. The trial court entered an order granting summary judgment in the District's favor. Plaintiff appeals this order. We affirm the trial court's judgment.

¶ 2                                    BACKGROUND
¶ 3                              I. Plaintiff's Employment
¶ 4    The District hired plaintiff as a "security agent" in March 1994. Some of his job responsibilities included patrolling school hallways and restrooms, checking hall passes, clearing school buildings of unauthorized visitors, directing traffic in school parking lots, "assisting as directed by school authorities in stopping disturbances and undue distractions" on school grounds, and "assisting all law enforcement officers whenever possible."

¶ 5    The District arranged for plaintiff to receive police training and certification through the Illinois Law Enforcement Training and Standards Board (ILETSB). He became certified as a police officer for the "Peoria Public School Police Department." Plaintiff utilized his training and certification to work as a police officer for the Peoria Park District, the Eureka Police Department, and the Marquette Heights Police Department.

¶ 6    In August 2011, the District imposed a new policy, titled "Board Policy on School Resource Officers" (Board Policy 5:400), which changed the name of "campus police officers" or "security agents" to "school resource officers." The policy characterized resource officers as "district truant officers" under the School Code (105 ILCS 5/26-5 (West 2016)). The policy explicitly authorized resource officers to "arrest" students *only* for truancy violations; resource officers lacked authority to issue citations or investigate any nontruancy crime.

¶ 7    In 2012, the ILETSB informed the District that school resource officers could no longer receive police training unless the District demonstrated its legal authority to maintain a police department. The District eventually conceded that it lacked such authority. The ILETSB thereafter designated the "Peoria Public School Police Department" inactive and discontinued police training for the District's resource officers.

¶ 8                          II. Plaintiff's Injury and Termination
¶ 9    On November 17, 2009, plaintiff sustained an on-the-job injury when a student attacked him. The student elbowed plaintiff in the eye, which caused his neck to "snap back." Plaintiff returned to work on November 20, but he performed only clerical and administrative functions.

He remained in this clerical and administrative role for the remainder of the 2009-10 school year and the entire 2010-11 school year.

¶ 10    Early in the 2011-12 school year, plaintiff took medical leave from the District pursuant to the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 *et seq.* (2012)). He never returned to work. After plaintiff exhausted his allotment of paid and unpaid leave, the District terminated his employment.

¶ 11    Plaintiff filed this lawsuit after his termination. He sought a declaratory judgment as to whether the Disability Act and Benefits Act entitled him to disability benefits awarded to "law enforcement officers" who sustain injuries in the line of duty. See 5 ILCS 345/1(a) (West 2016); 820 ILCS 320/10 (West 2016). If so, the District would be responsible for funding these benefits. The parties disputed whether plaintiff ever worked as a law enforcement officer for the District—his eligibility for Disability Act and Benefits Act benefits depended on this determination.

¶ 12    The parties filed cross-motions for summary judgment to resolve this dispute. After the hearing on July 28, 2017, the trial court entered judgment in the District's favor. The court found that the District's legal authority to hire law enforcement officers served as a condition precedent to plaintiff's eligibility for Disability Act and Benefits Act benefits. Because the District lacked authority to employ plaintiff as a law enforcement officer, the court concluded that plaintiff was ineligible for benefits under either statute. This appeal followed.

¶ 13                                     ANALYSIS

¶ 14    Plaintiff challenges the court's summary judgment order regarding his eligibility for Disability Act and Benefits Act benefits; we must construe each statute's language to decide this case. We review summary judgment orders and questions of statutory construction *de novo*. *Standard Mutual Insurance Co. v. Rogers*, 381 Ill. App. 3d 196, 198 (2008). Issues of statutory construction require courts to determine and effectuate the legislature's intent. See *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). The statute's language best reflects the legislature's intent—if the language is clear and unambiguous, then we must apply the statute as it is written. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. However, if the statute's language is subject to more than one reasonable interpretation, we may look beyond the language to ascertain its meaning. *In re D.D.*, 196 Ill. 2d 405, 419 (2001).

¶ 15    Plaintiff argues that the District employed him as a law enforcement officer; he is entitled to benefits regardless of the District's legal authority to do so. Alternatively, plaintiff claims that the District possesses authority to hire law enforcement officers under the School Code, which authorizes school districts to employ truant officers. 105 ILCS 5/26-5 (West 2016). According to plaintiff, truant officers qualify as law enforcement officers who are eligible for Disability Act and Benefits Act benefits. Plaintiff also raises an estoppel argument in which he contends that the District should not escape liability for his disability benefits merely because it exceeded its legal authority by hiring and training police officers to perform law enforcement functions—this result punishes plaintiff for the District's mistake. We address each argument separately below.

¶ 16                                    I. Employer Authority Requirement

¶ 17        The Disability Act defines an " 'eligible employee,' " in relevant part, as "any full-time law enforcement officer *** who is employed by the State of Illinois, any unit of local government (including any home rule unit), any State supported college or university, or any other public entity *granted the power to employ persons for such purposes by law*." (Emphasis added.) 5 ILCS 345/1(a) (West 2016). Under the statute, employers must provide employees with up to one year of full-salary paid leave if they suffer disabling injuries "in the line of duty." *Id.* § 1(b).

¶ 18        Plaintiff argues that he qualifies for Disability Act benefits regardless of the District's authority to employ law enforcement officers. The District sent him to police training where he became a certified officer of the "Peoria Public School Police Department." Plaintiff also claims that the District required him to perform the duties of a law enforcement officer during his employment.

¶ 19        The Disability Act's plain language establishes a condition precedent to obtaining benefits; the final clause in section 1(a) requires that the employer must be "granted the power to employ persons for such purposes by law." *Id.* § 1(a). Because plaintiff sustained the relevant injury while working for the District, the District's authority to hire law enforcement officers determines his eligibility for Disability Act benefits. Plaintiff's training, certification, and job duties are irrelevant to this unambiguous condition.

¶ 20        Similar to the Disability Act, the Benefits Act requires employers "who employ[ ] a full-time law enforcement, correctional or correctional probation officer, or firefighter, who *** suffers a catastrophic injury or is killed in the line of duty" to pay health insurance premiums for the injured employee and his or her family. 820 ILCS 320/10(a) (West 2016). To be eligible for Benefits Act benefits, "the injury or death must have occurred as the result of the officer's response to fresh pursuit, the officer or firefighter's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act." *Id.* § 10(b).

¶ 21        Plaintiff contends that his Benefits Act claim is a "lesser-included count of his [Disability Act] claim" because the Benefits Act lacks an explicit condition that the employer must be authorized by law to employ law enforcement officers for an employee to obtain benefits. We disagree.

¶ 22        The legislature intended the Benefits Act to continue employer-sponsored health insurance coverage for "officers and the families of officers who, due to a line-of-duty injury, have been forced to take a line-of-duty disability pension." *Nowak*, 2011 IL 111838, ¶ 17. The statute applies to employers "who employ[ ] a full-time law enforcement, correctional or correctional probation officer, or firefighter, who *** suffers a catastrophic injury or is killed in the line of duty." 820 ILCS 320/10(a) (West 2016).

¶ 23        Plaintiff's position would make everyone who completes law enforcement training and suffers a "catastrophic injury or is killed" on the job eligible for Benefits Act benefits, regardless of the employer or job title. Benefits Act benefit eligibility, like that of the Disability Act, must be contingent upon the employer's authority to employ people in the specific occupations contemplated in the statute—law enforcement officers in this case. Without such authority, the employer cannot "employ[ ] a full-time law enforcement *** officer" as the statute requires.

¶ 24    We hold that plaintiff's eligibility for benefits under either the Disability Act or the Benefits Act depends on whether the District possessed legal authority to employ law enforcement officers.

¶ 25                                    II. The District's Authority

¶ 26    Plaintiff alternatively argues that the School Code authorizes the District to employ law enforcement officers. Section 3-13 of the School Code (105 ILCS 5/3-13 (West 2016)) authorizes school districts to employ truant officers; section 26-5 describes truant officers' powers and duties. Based on section 26-5's language, plaintiff argues that truant officers are eligible for Disability Act and Benefits Act benefits.

¶ 27    Plaintiff relies on *Gibbs v. Madison County Sheriff's Department*, 326 Ill. App. 3d 473 (2001), where the court considered whether deputy sheriffs qualified as a "law enforcement officer" under the Disability Act. The sheriff assigned the deputies to work as corrections officers in the local jail; the sheriff never assigned either deputy to the patrol division. The court recognized that deputies possess "the common-law power to make warrantless arrests for breaches of the peace" and statutory powers that include acting as custodians of the courthouse and jail, serving and executing court documents, conserving the peace, preventing crime, arresting offenders and bringing them to the proper court, and executing warrants. *Id.* at 477-78. The court concluded that these "crime-prevention and law enforcement duties" were similar to those of city police officers. *Id.* at 478. Therefore, it held that the deputies qualified as "law enforcement officers" under the Disability Act, regardless of the division to which the sheriff assigned them.

¶ 28    Although we agree that job duties are relevant to whether an employee qualifies for Disability Act or Benefits Act benefits, the court's holding in *Gibbs* has no bearing on this case. The issue here is whether *any* truant officer qualifies as a law enforcement officer under either the Disability Act or the Benefits Act—a very different question than the one presented in *Gibbs*. The critical distinction is that the issue in *Gibbs* addressed deputies' assignments; the sheriff unquestionably possessed authority to employ law enforcement officers. Here, the issue is whether the District possessed the requisite authority to hire plaintiff as a law enforcement officer under the Disability Act and the Benefits Act. Plaintiff cites no District positions, other than truant officers, that demonstrate its authority to employ law enforcement officers. The dispositive question is whether section 26-5 of the School Code equates school districts' truant officers to "law enforcement officers" entitled to Disability Act and Benefits Act benefits. The answer is no.

¶ 29    The Illinois Police Training Act defines a " '[l]aw enforcement officer' " as "any police officer of a local governmental agency who is primarily responsible for prevention or detection of crime and the enforcement of the criminal code, traffic, or highway laws of this State or any political subdivision of this State." 50 ILCS 705/2 (West 2016). Although this statute does not define the entire class of law enforcement officers—for example, it omits Illinois State Police officers governed by the State Police Act (20 ILCS 2610/9 (West 2016))—it establishes the primary duties of law enforcement officers employed by "municipalities, counties, park districts, State controlled universities, colleges, and public community colleges, and other local governmental agencies." 50 ILCS 705/1 (West 2016). These duties include the "prevention or detection of crime and the enforcement of the criminal code, traffic, or highway laws" in Illinois. *Id.* § 2.

¶ 30        According to the School Code, truant officers' primary responsibility is to "investigate all cases of truancy or non-attendance at school in their respective jurisdictions" whenever notified of a violation by "the Superintendent, teacher, or other person." 105 ILCS 5/26-5 (West 2016). Truancy is a violation of the School Code, not the Criminal Code of 2012. See 105 ILCS 5/art. 26 (West 2016). Truant officers also "shall in the exercise of their duties be conservators of the peace and shall keep the same, suppress riots, routs, affray, fighting, breaches of the peace, and prevent crime; and may arrest offenders on view and cause them to be brought before proper officials for trial or examination." *Id.* § 26-5.

¶ 31        Section 26-5 of the School Code lacks sufficient clarity on its face to answer the question presented. The statute's language, viewed in context with other sections of the School Code, creates a morass of speculation as to whether truant officers may investigate nontruancy crimes or enforce "the criminal code, traffic, or highway laws of this State" (50 ILCS 705/2 (West 2016)). For example, principals and/or superintendents who receive a report from any school official or "school personnel" regarding firearms, drugs, or a battery committed against "teachers, teacher personnel, administrative personnel or educational support personnel" on school property *must* report the incident to "the local law enforcement authorities." 105 ILCS 5/10-21.7, 10-27.1A, 10-27.1B. (West 2016). Although section 26-5 of the School Code describes truant officers as "conservators of the peace" and grants them authority to "arrest offenders on view," these statutes fail to mention truant officers at all. *Id.* § 26-5. One could reasonably infer that these omissions suggest that truant officers lack authority to investigate criminal offenses involving drugs, firearms, or battery in schools. This interpretation certainly distinguishes truant officers from "local law enforcement authorities."

¶ 32        What is clear from the record is that the District's Board Policy 5:400 classified resource officers as truant officers. Although section 26-5 of the School Code uses language similar to that describing "peace officers" under the Criminal Code of 2012 (720 ILCS 5/2-13 (West 2016)) and police officers under the Illinois Municipal Code (65 ILCS 5/11-1-2 (West 2016)), Board Policy 5:400 explicitly prohibited the newly-classified truant officers from investigating or issuing citations for nontruancy crimes. Although we are not bound to interpret section 26-5 in accordance with the District's policies, it is noteworthy in this case that the District's truant officers lack many "crime-prevention and law enforcement duties" similar to those of municipal police officers. See *Gibbs*, 326 Ill. App. 3d at 478.

¶ 33        Aside from its failure to clearly define truant officers' authority, the School Code also lacks any language that explicitly equates truant officers to municipal police or other undisputed law enforcement officers. By contrast, higher education statutes explicitly state that campus police at public colleges or universities "shall *** have all powers possessed by policemen in cities, and sheriffs, including the power to make arrests on view or warrants of violations of State statutes, University rules and regulations and city or county ordinances." See 110 ILCS 660/5-45(11), 670/15-45(11), 675/20-45(11), 685/30-45(11) (West 2016); see also 110 ILCS 305/7(a), 520/8(10) (West 2016).

¶ 34        The plain language of the higher education statutes comports with that in the Disability Act. The Disability Act unambiguously states that law enforcement officers employed by "any State supported college or university" are eligible for benefits. 5 ILCS 345/1(a) (West 2016). Section 1(a) does not explicitly list truant officers or any other employee of a public school district as an eligible employee. Because public colleges and universities unquestionably employ full-time law enforcement officers in their police departments, campus police officers

are also eligible for Benefits Act benefits. See 820 ILCS 320/10(a) (West 2016). In light of campus police officers' unquestionable entitlement to Benefits Act benefits and the explicit language in the higher education statutes and the Disability Act, the School Code's ambiguity suggests that legislature meant to distinguish truant officers from campus, municipal, and other types of police officers who are entitled to Disability Act and Benefits Act benefits.

¶ 35   Another significant omission in the School Code is its lack of training requirements for truant officers. Campus police applicants at colleges and universities must complete police training before becoming a full-time law enforcement officer for a college or university's police department, just like applicants at other public police departments. See, *e.g.*, 50 ILCS 705/1, 8.1 (West 2016); 20 ILCS 2610/9 (West 2016). Neither the School Code nor the Police Training Act set forth any police training or certification standards for truant officers.

¶ 36   Although we acknowledge that the question presented is a difficult one, we believe that the aforementioned language absent from the School Code blazes the trail through this thicket of statutory construction. Although section 25-6 of the School Code describes truant officers as "conservators of the peace" and grants them authority to "arrest offenders on view," the plain language does not explicitly state whether truant officers' powers and duties extend beyond investigating truancy cases. Read in context with the explicit language in other police statutes (*i.e.*, the Police Training Act, the higher education statutes, and the State Police Act), the School Code does not grant truant officers authority to investigate nontruancy crimes (such as any violation of the Criminal Code of 2012) or to issue citations for any traffic violation. Nor does the School Code explicitly convey legislative intent that truant officers must be treated like public police officers with regard to Disability Act and Benefits Act benefits. We hold that the powers and duties of truant officers distinguish them from law enforcement officers. The District, therefore, never possessed legal authority to employ law enforcement officers to perform law enforcement functions. Plaintiff was never a law enforcement officer for the District and is not entitled to Disability Act or Benefits Act benefits.

¶ 37                                    III. Estoppel Claim

¶ 38   Finally, plaintiff asserts an estoppel claim in which he argues that the District, regardless of the Disability Act and Benefits Act's statutory construction, should be liable for plaintiff's statutory benefits in this case. He claims that the District employed law enforcement officers to perform police functions despite lacking the requisite authority and denying plaintiff's benefits based on the District's error is unjust. However, plaintiff never alleged this claim in any version of his complaint. A complaint "fixes the issues in controversy and the theories upon which recovery is sought." *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911 (1994). Plaintiff forfeited this claim by failing to plead it. Even if plaintiff properly raised and preserved his estoppel claim, it fails on its merits.

¶ 39   Plaintiff failed to present evidence in the record sufficient to satisfy the requisite elements for an estoppel claim. To prevail on either a promissory or equitable estoppel claim, plaintiff needed to prove that he reasonably relied on the District's promise or act to his own detriment. See *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40; *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009). The record contains no indication that the District made any promise or acted in any way that caused plaintiff to rely on his entitlement to Disability Act or Benefits Act benefits to his detriment. In fact, the record does not indicate that plaintiff relied on his entitlement to these benefits at all. The record

shows that, during his employment with the District, plaintiff worked as a law enforcement officer for two municipalities (Eureka and Marquette Heights) and the Peoria Park District. Plaintiff does not claim that he opted out of any benefit package or refused full-time positions with these law enforcement entities because he assumed that he would be entitled to Disability Act and Benefits Act benefits if he became disabled while working for the District. Without this evidence, plaintiff cannot satisfy the elements of either estoppel claim.

¶ 40 Nonetheless, plaintiff cites *East Peoria Community High School District No. 309 v. Grand Stage Lighting Co.*, 235 Ill. App. 3d 756 (1992), for the proposition that estoppel may be applied against school districts if "under all the circumstances of the case, the affirmative acts of the district have created a situation where it would be inequitable and unjust to permit it to deny what it has done or permitted to be done." *Id.* at 762. *East Peoria* involved a construction contract dispute between the school district, the general contractor, and subcontractors. The school district argued that the contract was void because the district failed to follow certain statutory procedures in drafting it. Put another way, the district attempted to avoid paying the subcontractors for their work by arguing its own erroneous procedure voided the contract. A panel of this court correctly rejected the district's position.

¶ 41 Based on *East Peoria*'s holding, plaintiff claims that the District should not escape liability for benefits after it received the benefit of plaintiff performing police functions as a District employee. We disagree with plaintiff's reliance on *East Peoria* because this case presents very different circumstances. The most obvious distinction between *East Peoria* and this case is that the subcontractors performed the work because they reasonably relied on the contractual promise that either the district or the general contractor would pay the agreed price—these facts demonstrate the essential elements of an estoppel claim. In this case, on the other hand, the District paid plaintiff wages and provided him benefits for his work. There is no evidence that plaintiff ever relied on, or even considered, his entitlement to Disability Act and Benefits Act benefits when he chose to accept his job or continue his employment with the District.

¶ 42 Another important distinction between the two cases is that, in this case, the District lacked authority to make the alleged promise—it could not lawfully hire law enforcement officers. In *East Peoria*, the district had authority to draft the construction contract; it merely failed to follow the proper statutory procedures. The doctrine of estoppel cannot be invoked against a public body when the subject action or promise is *ultra vires* (beyond its legal authority) and void. *Evans v. Benjamin School District No. 25*, 134 Ill. App. 3d 875, 883 (1985).

¶ 43                                                    CONCLUSION
¶ 44 For the reasons set forth above, we affirm the judgment of the circuit court of Peoria County.

¶ 45 Affirmed.